NITIN SUD (*pro hac vice pending*)
Texas Bar No.: 24051399
SUD LAW P.C.
6750 West Loop South, Suite 920
Bellaire, Texas 77401
Email: nsud@sudemploymentlaw.com
Phone: 832-623-6420
Fax: 832-304-2552

MONIKA SUD-DEVARAJ
Arizona Bar No.: 14905
Law Offices of Monika Sud-Devaraj, PLLC
141 E. Palm Lane, Ste. 100
Phoenix, AZ  85004
(602) 234-0782
monika@msdlawaz.com

*Attorneys for Plaintiffs and those similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Ashley Gillespie; Tonya Miller; Tami Brown; Sarah Mangano, individually and behalf of themselves and all other persons similarly situated, | § § § § § | Case No. |
| | § | **FLSA COLLECTIVE ACTION COMPLAINT** |
| *Plaintiffs,* | § § | |
| | § | JURY TRIAL DEMANDED |
| v. | § § | |
| Cracker Barrel Old Country Store, Inc., | § § | |
| *Defendant.* | § § | |

-----------------------------------------------------------

### INTRODUCTION

1. Cracker Barrel, a nation-wide restaurant chain with over 650 stores around the country, has employed tens of thousands of servers over the past three years who have been

paid less than minimum wage so that Cracker Barrel can *try* to take advantage of a "tip credit" under the Fair Labor Standards Act (FLSA).  But Cracker Barrel does not comply with the tip credit requirements, and it violates the FLSA in at least three different ways.

2.  First, Cracker Barrel pays its servers less than minimum wage while forcing them to perform time-intensive, non-tipped duties to avoid employing or paying more to back-of-house employees.  In appropriate circumstances, the FLSA allows employers to take a tip credit and pay certain employees (servers) less than minimum wage but only if they spend enough time (at 80%) performing tipped duties.  Back-of-house employees, by contrast, are paid at least minimum wage per hour. By forcing servers to do more non-tipped work, Cracker Barrel is able to save money in labor costs and increase its profitability, at the detriment of its employees. Cracker Barrel intensified this scheme recently by implementing nationwide polices that require servers to spend even more time on non-tipped duties, and more so during the COVID-19 pandemic.  Cracker Barrel is essentially taking advantage of the COVID-19 pandemic to make its servers work more for less money.

3.  Second, Cracker Barrel failed to timely provide the required "tip-credit notice" to its servers that it would be paying them less than minimum wage and taking a "tip credit" for the first week of their employment as a server.  Although the tip credit notice is eventually placed on the servers' paystubs, such notice is late for the first week of the servers' pay because the servers had already worked at least a week before being notified about Cracker Barrel's payment scheme.

4.   Third, servers are often required to work off-the-clock.  This may be either before their shifts starts or after they clock-out.  They may be performing non-tipped duties during these time periods or being forced to wait at the store in order to collect their tips.  This is blatant off-the-clock work, where servers are being paid nothing for this time.

### PARTIES

5.   Defendant, Cracker Barrel Old Country Store, Inc., is a Tennessee corporation with its principal offices located at 305 Hartman Drive, Lebanon, TN, 37807.  It regularly conducts business in several states throughout the country, including Arizona.

6.   Plaintiff Ashley (Jade) Gillespie was employed by Defendant as a tipped employee at one of Defendant's Cracker Barrel restaurants in Phoenix, Arizona within the past three years preceding the filing of this class action lawsuit (Ashley Gillespie's Consent to join this collective action is attached hereto as *Exhibit A*.)

7.   Plaintiff Tonya Miller has been employed by Cracker Barrel since 1989 and has worked in several Cracker Barrel restaurants in different states.  She currently lives and works for Cracker Barrel in South Carolina. (Tonya Miller's Consent to join this collective action is attached hereto as *Exhibit B*.)

8.   Plaintiff Tami Brown has been employed by Cracker Barrel for about four years and currently works for a Cracker Barrel in North Carolina. (Tami Brown's Consent to join this collective action is attached hereto as *Exhibit C*.)

9.  Plaintiff Sarah Mangano has been employed by Cracker Barrel since 2016 and currently works for a Cracker Barrel in Pennsylvania. (Sarah Mangano's Consent to join this collective action is attached hereto as *Exhibit D.*)

10. The above-referenced plaintiffs are collectively referred to as "Named Plaintiffs."

## PUTATIVE CLASS MEMBERS

11. The class of similarly situated employees or putative class members ("Putative Class Members") sought to be certified is defined as follows:

> All current and former tipped employees (servers, waiters, and waitresses) of Cracker Barrel Old Country Store, Inc. who work (or have worked) at Cracker Barrel Old Country Store restaurants ("Cracker Barrel restaurants") in the past three years.[1]

## JURISDICTION AND VENUE

12. The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based on 29 U.S.C. § 216 (b) and 28 U.S.C. § 1331.

13. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant regularly conducts business in this District and several plaintiffs (whether Named Plaintiffs or opt-in plaintiffs) reside in this jurisdiction.  Defendant has approximately 14 stores in Arizona with hundreds of employees.

---

[1] Named Plaintiffs reserve the right to modify or amend the Class Description upon any information gathered after the filing of this lawsuit.

## FACTUAL BACKGROUND

### The FLSA applies to Cracker Barrel

14. Cracker Barrel is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(b), (r).

15. Cracker Barrel is an employer as defined by the FLSA.  29 U.S.C. § 203(d).

16. Cracker Barrel has annual gross business of over $500,000.  In fact, for the 12 months ending July 31, 2020, Cracker Barrel had over $2.5 billion in revenue.

17. Cracker Barrel employed Named Plaintiffs at all relevant times within the meaning of the FLSA. 29 U.S.C. § 203(g).

18. In performing their duties for Cracker Barrel, Named Plaintiffs were engaged in commerce or in the production of goods for commerce.

### FLSA tip credit

19. Section 3(m) of the FLSA allows restaurants to pay its tipped employees less than minimum wage if certain conditions are met. The gross amount of money, below minimum wage, withheld from a server's pay is called a "tip credit."

20. The FLSA tip credit privilege, however, has explicit requirements that employers must follow.

21. As a condition of the privilege of paying servers less than minimum wage, the FLSA requires that they must be doing work capable of making tips. The FLSA allows restaurants to oblige its servers to do some work that does not generate tips, but that work may not exceed 20% of the employee's time (hereafter referred to as the "80/20 Rule").

22. Cracker Barrel, like most restaurants, has two classifications of pay for its non-management employees—tipped and non-tipped.[2]

23. Servers are tipped employees. Cracker Barrel pays its servers less than minimum wage in most of the states in which it operates. The FLSA allows Cracker Barrel to do this under the tip credit scheme.

24. Each state determines its tip credit. For example, Arizona's tip credit is $2.95 an hour. Its minimum wage is $12.00 an hour. Under the FLSA, then, Cracker Barrel in Arizona subtracts $2.95 from $12.00 and pay its servers $9.05 an hour.  As other examples, in Tennessee, Alabama, and Mississippi, servers are paid as little as $2.13 an hour as the Federal minimum wage is $7.25. Michigan allows employers to pay servers $3.67 an hour while its minimum wage is $9.65 an hour.

**Cracker Barrel requires its servers to do excessive non-tipped work.**

25. Cracker Barrel's servers spend more than 20% of their work time performing non-tipped duties, described as follows.

    a)    Cracker Barrel obliges its servers to do "side-work."

26. Cracker Barrel provides each store with a set of "side-work" charts. These charts are created by Cracker Barrel's corporate office and are uniform across all stores.

27. During a shift, a server is assigned one or more side-work duties to perform.

---

[2] Non-tipped employees are paid the either the federal minimum or their state's minimum wage, whichever is greater. In Arizona, for example, non-tipped employees must be paid $12.00 an hour. In Tennessee, Mississippi, and Alabama, non-tipped employees must be paid $7.25 an hour (the federal minimum wage).

28. The following is a list of the side-work duties that must be completed during and
after each shift:

 i. Primary Delfield:[3] This is the condiment and garnish refrigerator housed
along the server line.[4] Servers must clean and restock every garnish and
dressing in the Primary Delfield.

 ii. Secondary Delfield: This is a secondary condiment and garnish refrigerator
housed next to the Primary Delfield. Servers must clean and restock every
garnish and dressing in the Secondary Delfield.

 iii. Tea and Soda Stations: There are two Tea and Soda Stations—one each end
of the server line. The Stations must be restocked (i.e., tea must be made,
and soda mix, ice, and drink garnishes must be kept stocked) and kept clean
during the day. At the end of the day, the tea urns must be thoroughly
cleaned with urn cleaner, and the soda fountains must be broken down and
cleaned. The nozzles for both the Tea and Soda Stations must be soaked in
cleaner overnight.

 iv. Coffee Stations: Industrial coffee and latte machines must be kept stocked
with coffee, hot tea, gallons of milk, espresso beans, syrups and sauces, iced
tea bags, coffee liners, and coffee mugs. The machines must be cleaned
throughout the day, and the pots must be cleaned with urn cleaner. The

---

[3] A "Delfield" is the industry term for a brand of waist-high refrigerators.

[4] The server line is the area in the back of house in which the servers get their
customer's food and drink.

adjacent sink and trash bin must also be cleaned. The serving trays kept near the Stations must be wiped down throughout the day. At night, the servers must send the trays to the dish room for cleaning.

v.   Milk Delfield: Servers must keep milk stocked and rotated to prevent spoilage. Cider, lemonade mix, and orange juice must be kept stocked. The Milk Delfield must be kept clean, inside and out.

vi.   Root Beer and Juice Pulls: root beer, juice, and single serve beverages (e.g., Stewart's Orange Soda) must be kept in stock.

vii.   Bread Toaster, and Cereal: The bread toaster and warmer must be kept clean and bread and cereal must be kept stocked.

viii.   Server and Prep Server Pass "Thru" Windows: The window in which freshly cooked food is placed to keep warm must be kept clean and wiped down. The window through which cold items (e.g., salads) must be kept cleaned and wiped down. The area in which plates are kept must also be cleaned.

ix.   Condiment Shelves: There are two Condiment Shelves—one at each end of the server line. Servers must rotate condiments and keep them cleaned and stocked. During COVID, each condiment bottle must be sanitized after every use and at the end of the shift.

x.   To Go and Silverware Stands: There is one To Go station. This station contains the necessary containers, lids, and bags for carry out orders. This station must be kept cleaned and stocked throughout the day.

xi.   Juice Machine: The juice machine (which contains orange juice and lemonade in separate hoppers) must be cleaned and stocked throughout the day. At night, the machine must be broken down and each part must be washed by hand and the machine must be reassembled.

xii.   Break Room and Bus Carts: The Break Room must be swept, cleaned, and any trash must be thrown away. The Bus Carts (the carts which hold the tubs in which dirty dishes are deposited) must be wiped down thoroughly.

xiii.   Preparing Food: After fried chicken was permanently added to Cracker Barrel's menu two years ago, servers had to make biscuits, desserts, and salads because the back-of-house employees were preoccupied with frying chicken.

xiv.   Washing Dishes: Servers often have to wash silverware prior to rolling them in napkins.

29. None of these tasks are tipped duties.

     b)   <u>Cracker Barrel requires its servers to clean and maintain their serving sections.</u>

30. Servers operate in each dining room in "sections" of tables.

31. Servers are required to keep their tables clean, the sugar caddies filled, and keeping the salt and pepper shakers filled and wiped down. Servers must also sweep their sections throughout the day and at the end of the shift.

32. Before the Microsoft AX ("MAX") program was implemented (discussed below) servers would typically have 2-3 table sections on the weekends. After MAX implementation, servers are responsible for anywhere from 4-6 tables.

33. Post-MAX implementation, servers spend more time cleaning their larger sections to clean, and during which, they cannot generate tips.

34. In some locations, servers are now required to mop their sections at some point during the shift.

35. None of these tasks are tipped-duties.

      c)    <u>Cracker Barrel obliges its servers to perform MAC duties to maintain the restaurants.</u>

36. Manager Assigned Cleaning or "MAC" duties are separate from "side-work."

37. MAC duties are also non-tipped duties and they are different from, and in addition to, what Cracker Barrel considers side-work duties.

38. MAC duties are assigned to each shift. Each server must pitch-in to complete the MAC duty.

39. The following is a list of MAC duties assigned to each day's servers:

    i.    Cleaning the lantern globes on each table either glass cleaner or soap and water;

    ii.    Scraping gum from the underside of the tables in each server's section;

    iii.    Deep clean all tables and chairs including crossbars and legs;

    iv.    Deep clean table tents (promotional insert holders) and replace soiled promotional inserts;

     v.    Deep clean all walls on server aisle including behind tables and equipment;

    vi.    Emptying and deep clean of salt and pepper shakers;

    vii.    Sugar caddies must be emptied and deep cleaned at night. They are filled the following morning;

    viii.    Refill cruets (condiment dispensers for vinegar);

    ix.    Emptying and sanitizing the server line ice bins;

    x.    Deep clean Delfields inside and out;

    xi.    Deep clean all refrigerator gaskets;

    xii.    Deep clean Coke machine, juice machine, and tea machine;

    xiii.    Deep clean tea urns and coffee storage bins (holds bags of loose coffee grounds)

    xiv.    Soak soda fountain nozzles in Urnex solution; and

    xv.    Remove all glass and cup racks then clean and polish sides of rack stand with all-purpose degreaser.

40. None of these tasks are tipped-duties.

    d)    <u>Cracker Barrel requires its servers to roll silverware.</u>

41. Cracker Barrel supplies its patrons with silverware in "rolls" containing a fork, spoon, and knife.

42. Servers are required to create these rolls—called "rolling silverware"—every shift.

43. Rolling silverware takes a significant amount of time to complete.

44. This is not a tipped duty.

e)   Cracker Barrel has started to cross-train its servers on additional non-tipped duties.

45. Recently, servers have started to actually be cross-trained on cooking positions, such as back up cook and salad and dessert preparation.  These are non-tipped duties.

f)   In the last four years, Cracker Barrel has significantly increased the amount of non-tipped duties servers must perform.

46. Prior to 2017, Cracker Barrel exclusively used a computer program called MICROS to relay food orders entered by servers to the kitchen.

47. In 2017, Cracker Barrel began implementing a program called Microsoft AX or "MAX." The MAX program was designed to replace MICROS and improve the efficiency of Cracker Barrel's stores as a whole. One of the goals of this program was to reduce the number of servers needed per shift by issuing electronic tablets to servers so they could "ring in" customers' food orders and increase their efficiency.

48. The MAX program created a new position called "server assistants." The server assistants were intended to do what traditionally what was server's side-work.

49. But Cracker Barrel eliminated the server assistant position from the MAX program to reduce labor costs. With Cracker Barrel's implementation of the MAX program without server assistants, there are less servers to do the side-work each shift and each server must do more side-work, on average, than before.

50. It is common for servers to be assigned more than one of the side-work duties outlined above in addition to the other non-tip generating duties discussed above.

51. Cracker Barrel reduced the number of servers even further when the COVID pandemic struck in early 2020. During the pandemic, Cracker Barrel increased the non-tipped duties that the reduced number of servers have to do. For example, at closing time, servers have "deck brush" (a more-time intensive form of mopping) the server alley and food preparation area. Servers are also being required to do enhanced sanitizing of all condiments after each customer uses them.

52. Cracker Barrel used to have a "night-maintenance" position, which would be an employee cleaning stores overnight while it was closed. Starting in 2020, that position was eliminated and servers were then required to fulfill the job duties of the "night-maintenance" position.

53. During COVID, it also became essential to spend much more time cleaning or disinfecting almost everything in the restaurant, repeatedly. Cracker Barrel took advantage of the servers' low pay rather than hiring additional employees who should have been paid at least minimum wage. The only purpose was to increase profits at the detriment of the servers and potential employees. Even if Cracker Barrel hired just three extra minimum wage employees per store to perform non-tipped work (instead of requiring servers to perform these jobs at below minimum wage), that could have resulted in about 2,000 more jobs nationwide and allowed servers to spend more time on tipped duties. Instead, servers are spending more time on non-tipped duties and ultimately earning less money on an hourly basis prior to COVID. Cracker Barrel chose profits over people.

g)  Cracker Barrel willfully chose to ignore its violations of the 80/20 Rule.

54. Upon information and belief, in or around 2016 or 2017, Joe Walsh, a member of Cracker Barrel's upper management, removed a draft provision to the Cracker Barrel store operations manual requiring Cracker Barrel store managers to ensure employees were in compliance with the 80/20 Rule.

55. Upon information and belief, around the same time Joe Walsh removed the 80/20 Rule provision from the store operations manual, corporate employees at the home office were actively discussing the 80/20 Rule.

56. Cracker Barrel, therefore, knew it was violating the 80/20 Rule yet it chose to maximize profits while overworking its servers.

**Cracker Barrel does not inform its servers that it will take a tip-credit until at least a week after it starts utilizing the tip credit exception.**

57. If an employer is to utilize a proper tip credit exemption to the minimum wage requirements of the FLSA, it is required to provide appropriate notice to these employees with specific details. These are articulated in section 3(m) of the FLSA: (1) the amount of sub-minimum wage cash wage that is to be paid to the respective tipped employee; (2) the amount by which wages of the respective tipped employee are decreased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the Section 203(m) notice.

58. The FLSA requires that the tip credit notice be provided *before* an employer takes advantage of it.

59. But Cracker Barrel does not provide notice before each server begins performing tipped work.

60. Servers do not get notice of the tip credit until at least one week after starting tipped work. Cracker Barrel servers receive check-stubs every week for work performed the previous week. For example, an employee is paid on December 31, 2020 for the time he/she worked from December 19-25, 2020.

61. The servers' check-stubs provide a tip credit notice. But the first notice is sent too late.

62. Therefore, the first week an employee works as a server, he/she has not been provided the proper tip credit notice required by Section 203(m) of the FLSA. This violation applies to every Cracker Barrel employee and is a uniform injury.

## **Cracker Barrel requires its servers to work off-the-clock.**

63. Hourly employees, such as servers, are required to be paid for all hours worked.

64. Cracker Barrel is obligated to maintain accurate time records of all hours its servers work.

65. But servers are often required to work off-the-clock, so Cracker Barrel's time records are actually not accurate. Examples of working of the clock include, but are not limited to the following:

i.    Servers often have to clock-out before being paid their tips. While waiting, they remain at the store, usually interacting with customers and employees or performing various job duties. The amount of time any particular server spends waiting to be paid his/her tips frequently ranges from 10 – 45 minutes per shift. Cracker Barrel has refused to implement the direct deposit of server's tips to prevent servers from waiting off-the-clock to receive their tips.

ii.    Servers are often required to clock-out and then perform various non-tipped duties after their shifts are officially over.

iii.    Servers are often required to help with non-tipped duties before clocking-in at the start of their shifts.

66. Perhaps most troubling is that Cracker Barrel takes advantage of minors (who are in high school) who are limited in the amount of time they can work based on state laws. For example, a state may limit a minor to working no more than five hours per day. Cracker Barrel knows this and requires such children to clock-out yet continue working.

67. Cracker Barrel does not maintain any records of this unpaid time that servers spend working off-the-clock. Furthermore, Cracker Barrel may often automatically clock-out servers after a set amount of time, regardless as to whether such servers are working more than their scheduled shift or working a double-shift.

68. Cracker Barrel should be paying these servers at least minimum wage for this unpaid work.

## COLLECTIVE ACTION ALLEGATIONS

69. Numerous other individuals who worked for Cracker Barrel were paid in the same manner, performed similar work, and were not properly compensated as required by the FLSA.  Although the specific amount of damages may vary depending on the specific state any particular plaintiff worked (based on the amount of tip credit), Cracker Barrel's illegal policies and practices were applied to all employees working in states where Cracker Barrel attempted to utilize a the tip credit under section 3(m) of the FLSA.  Therefore, Cracker Barrel's FLSA violations result from systemic policies and practices which are not dependent on the personal circumstances of Putative Class Members.

70. Accordingly, Named Plaintiffs bring this action on behalf of themselves and other similarly situated employees as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206 and 216(b).

71. The claims under the FLSA may be pursued by other similarly situated employees who opt-in to this case under 29 U.S.C. § 216 (b).

72. Named Plaintiffs have no interest contrary to, or in conflict with, the Putative Class Members, as they all have an interest in obtaining wages owed to them under the FLSA.

73. A collective action is superior to other available means for fair and efficient adjudication of the lawsuit.

74. Absent this action, many Putative Class Members will not be compensated for their damages, and Cracker Barrel will have unjustly benefitted for violating the FLSA.

75. Notices for over 100 additional opt-in plaintiffs are being filed, but there are likely 100,000 – 200,000 similarly situated tipped employees that could comprise the class.

76. Named Plaintiffs' claims are typical of the claims of the class.  Named Plaintiffs and Putative Class Members were subjected to the same operational, compensation, and timekeeping policies and practices, including Defendant's failure to provide them with a timely Section 203(m) tip credit notice, Defendant's failure to pay them the applicable minimum wage for non-tipped work which exceeded twenty percent of their total time worked, and requirement to work off-the-clock.

77. Common questions of law and fact exist as to the class as to the class which predominate over any questions only affecting other members of the class individually and include, but are not limited to, the following:

    i.  Whether Named Plaintiffs and Putative Class Members were required to complete non-tipped work in excess of twenty percent of their work week;

    ii.  Whether Named Plaintiffs and Putative Class Members were given timely notice that Defendant was taking a tip credit prior to their employment;

    iii.  Whether Named Plaintiffs and Putative Class Members worked off-the-clock;

    iv.  Whether Named Plaintiffs and Putative Class Members worked in violation of the FLSA standards; and

    v.  Whether Cracker Barrel willfully violated the FLSA.

**COUNT I**
**<u>Cracker Barrel violated the FLSA by forcing servers to perform non-</u>**
**<u>tip-generating duties in excess of 20% of their work week.</u>**

78. Named Plaintiffs, on behalf of themselves and other members, repeat and re-allege each and every allegation above as if fully set forth herein.

79. At all times relevant herein, Cracker Barrel has been and continues to be an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

80. At all times herein, Cracker Barrel employed (and/or continues to employ) Named Plaintiffs and Putative Class Members.

81. At all times relevant and based on the aforementioned allegations, Cracker Barrel has had a centralized, uniform and common plan, policy and practice of willfully refusing to pay Plaintiffs and other members of the class minimum wage for time spent in performing non-tipped duties in excess of twenty percent of their work time without receiving the applicable minimum wage.

82. At all times relevant, Cracker Barrel has had actual and/or constructive knowledge of refusing to pay Named Plaintiffs and Putative Class Members the applicable minimum wage for all time spent performing non-tipped duties in excess of twenty percent of their work time.

83. As a result of Cracker Barrel's willful failure to compensate Named Plaintiffs and Putative Class Members for at least the applicable minimum wage for all time spent

performing related non-tipped duties in excess of twenty percent of their work time, Cracker Barrel has violated and continues to violate the FLSA.

84. Named Plaintiffs and Putative Class Members are therefore entitled to compensation for unpaid minimum wages at an hourly rate required by the FLSA for all the time spent performing related, non-tipped duties producing job duties in excess of twenty percent of their work time and an additional amount as liquidated damages, together with interest, costs, and reasonable attorney's fees for the three-year statutory period under the FLSA.

**COUNT II:**
**Cracker Barrel violated the FLSA by not providing a timely tip-credit notice.**

85. Named Plaintiffs, on behalf of themselves and Putative Class Members, repeat and re-allege each and every allegation above as if fully set forth herein.

86. Named Plaintiffs and Putative Class Members were paid hourly rates of pay below the applicable minimum wage.

87. Pursuant to Cracker Barrel's aforementioned failure to provide Named Plaintiffs and Putative Class Members with timely notice of the tip credit requirements under Section 203(m), it has disqualified itself from being eligible for such plan for the first week each server began working as a tipped employee.  Therefore, Defendant is liable to Named Plaintiffs and Putative Class Members for all hours worked within weekly pay periods during all times material at the applicable minimum wage.

88. At all times relevant, Cracker Barrel has had actual or constructive knowledge of failing to provide Named Plaintiffs and Putative Class Members and those similarly situated of the aforementioned Section 203(m) four-point notice relating to its tip credit compensation plan.

## COUNT III
### Cracker Barrel violated the FLSA by not paying servers for off-the-clock work.

89. Named Plaintiffs, on behalf of themselves and other members, repeats and re-alleges each and every allegation above as if fully set forth herein.

90. At all relevant time periods, Cracker Barrel employed and continues to employ the Named Plaintiffs and Putative Class members within the definition of the FLSA.

91. The FLSA requires that employees are paid for all hours worked and at one and one-half times their "regular rate" for all hours worked in excess of 40 hours in a workweek. The "regular hourly rate of pay of an employee is determined by dividing his or her total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him or her in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

92. Cracker Barrel violated the FLSA by failing to pay the Named Plaintiffs and Putative Class Members and all other similarly situated employees for all compensable hours worked at the applicable minimum wage rates for all hours worked in a workweek, including overtime hours worked, if any.

93. Specifically, as discussed above, Cracker Barrel required employees to perform off-the-clock work including, but not limited to, side work, MAC duties, and waiting in line to collect their tips without being paid at the applicable minimum wage rates for both regular and overtime hours.

94. At all relevant times, Cracker Barrel had actual and/or constructive knowledge of failing to compensate Named Plaintiffs and Putative Class Members at the applicable minimum and overtime wage rates.

**COUNT IV**
**Willful violation of the FLSA and lack of good faith.**

95. Cracker Barrel's FLSA violations referenced above, and as follows, constitute a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

96. Cracker Barrel did not act in good faith when attempting to comply with the FLSA.

97. As an example of Cracker Barrel's willful violations and/or lack of good faith with respect to complying with the FLSA, Named Plaintiffs incorporate the above-referenced facts, and especially note the following facts which further support the FLSA violations:

   i.   Cracker Barrel operates in approximately 45 states, including California and other states that do not allow a tip credit and/or otherwise require additional wage-related benefits for employees. Upon information and belief, Cracker Barrel is in compliance with FLSA requirements in California and, therefore, is aware of the laws that require compliance with the tip credit

and preventing off-the-clock work. However, it chooses not to follow the law with respect to Named Plaintiffs and Putative Class Members.

ii.   Cracker Barrel has been cross-training servers to perform non-tipped duties, taking advantage of the COVID pandemic to increase the amount of time servers spend performing non-tipped duties at sub-minimum wage rates and to reduce the number of back-of-house employees that it has to employ at minimum wage.

iii.   A former Cracker Barrel Store Operations Supervisor has confirmed that upper management had discussions internally about potential pay-related violations relating to the tip-credit exemption; however, nothing was done to fix the problem.  This same former employee was privy to discussions amongst upper management in about 2016 or 2017 referencing concerns about servers having to clock-out to receive their tips, which resulted in off-the-clock work.  Despite this concern, no written policies or written instructions were created or otherwise provided in order to prevent such an FLSA violation.

iv.   Cracker Barrel conducted a third-party labor audit in approximately 2014 that apparently determined various tasks could be performed differently, thus reducing the amount of money allocated to each store for labor.  This directly resulted in servers performing more non-tipped duties.

v.   Cracker Barrel requires its managers to have minors who are servers clock-out in order to avoid having a record of violating child-labor laws.

vi.   In some stores, Cracker Barrel forces its servers, when they clock-out, to electronically confirm that they did not spend more than 20% of their work time on non-tipped work.  If they do not confirm as expected, they cannot clock-out and face other adverse consequences.  Therefore, these servers are forced to inaccurately convey they did not work more than 20% of their time on non-tipped work.

vii.   Cracker Barrel chooses not to hire more prep workers or bussers (who would earn at least minimum wage), yet forces servers to perform the work that would normally be performed by prep workers and bussers.

98. Due to Cracker Barrel's aforementioned willful FLSA violations and lack of a good faith basis in committing such violations, Named Plaintiffs and the other members of the class are entitled to recover from Cracker Barrel compensation for unpaid minimum wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216 (b).

## **PRAYER FOR RELIEF**

Whereas, Named Plaintiffs, individually, and/or on behalf of themselves and all other similarly situated members of the class, request this Court to grant the following relief against Cracker Barrel:

A. Designation of this cause as a collective action on behalf of the class and promptly issue notice pursuant to 29 U.S.C. § 216 (a), apprising class members of the pendency of this action and permitting other members of the

class to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

B. An award of compensation for unpaid minimum wages to Named Plaintiffs and other members of the class at the applicable minimum wage rate of pay and, any related overtime at the applicable FLSA overtime rate of pay;

C. An award of liquidated damages to Named Plaintiffs and other members of the class; or in the alternative an award of prejudgment interest;

D. An award of post-judgment interest at the applicable legal rate to Named Plaintiffs and other members of the class;

E. An award of costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees to Named Plaintiffs and other members of the class;

F. A ruling that the three-year statutory period for willful violations under the FLSA shall apply in this action; and

G. Such other general and specific relief as this Court deems just and proper, including any equitable or injunctive relief.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiffs demands a trial by jury on all issues so triable.

Dated: May 28, 2021                          Respectfully submitted,

**SUD LAW P.C.**

*/s/ Nitin Sud*
Nitin Sud
*Attorney for Plaintiffs and those similarly*
*situated*
*(pro hac vice pending)*

**Law Offices of Monika Sud-Devaraj, PLLC**

*/s/ Monika Sud-Devaraj*
Monika Sud-Devaraj
*Attorney for Plaintiffs and those similarly*
*situated*

26