NITIN SUD (*pro hac vice*)
Texas Bar No.: 24051399
SUD LAW P.C.
6750 West Loop South, Suite 920
Bellaire, Texas 77401
Email: nsud@sudemploymentlaw.com
Phone: 832-623-6420
Fax: 832-304-2552

MONIKA SUD-DEVARAJ
Arizona Bar No.: 14905
Law Offices of Monika Sud-Devaraj, PLLC
141 E. Palm Lane, Ste. 100
Phoenix, AZ  85004
(602) 234-0782
monika@msdlawaz.com

*Attorneys for Plaintiffs and those similarly situated*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Andrew Harrington; Katie Liammaytry; Jason Lenchert, and Dylan Basch, individually and behalf of themselves and all other persons similarly situated, §§§§§§ | | Case No. 2:21-CV-00940-DJH |
| | | **SECOND AMENDED FLSA COLLECTIVE ACTION COMPLAINT** |
| *Plaintiffs,* §§§ | | |
| v. §§ | | **JURY TRIAL DEMANDED** |
| Cracker Barrel Old Country Store, Inc., §§§ | | |
| *Defendant.* §§ | | |

-------------------------------------------------------------

## INTRODUCTION

1.  Cracker Barrel, a nation-wide restaurant chain with over 650 stores around the country, has employed tens of thousands of servers over the past three years who

have been paid less than minimum wage so that Cracker Barrel can *try* to take advantage of a "tip credit" under the Fair Labor Standards Act (FLSA).   But Cracker Barrel does not comply with the tip credit requirements, and it violates the FLSA in at least three different ways.

2.   First, Cracker Barrel pays its servers less than minimum wage while forcing them to perform time-intensive, non-tipped duties to avoid employing or paying more to back-of-house employees.   In appropriate circumstances, the FLSA allows employers to take a tip credit and pay certain employees (servers) less than minimum wage but only if: a) they spend enough time (at 80%) performing tipped duties; b) they do not spend *any* time performing non-tipped duties that are unrelated to the servers' occupation; and c) as of December 28, 2021, no more than 30 minutes is spent on continuous non-tipped work, even if the total non-tipped work is less than 20%.   Back-of-house employees, by contrast, are paid at least minimum wage per hour. By forcing servers to do more non-tipped work, Cracker Barrel is able to save money in labor costs and increase its profitability, at the detriment of its employees. Cracker Barrel intensified this scheme recently by implementing nationwide polices that require servers to spend even more time on non-tipped duties, and more so during the COVID-19 pandemic.   Cracker Barrel is essentially taking advantage of the COVID-19 pandemic to make its servers work more for less money. In fact, a recent Cracker Barrel quarterly earnings reports (issued on February 22, 2022) indicate significantly higher revenue ($862 million)

and net income ($37.6 million) compared to prior quarters, while simultaneously having a disproportionately lower increase in labor costs.[1]

3. Second, Cracker Barrel failed to timely provide the required "tip-credit notice" to its servers that it would be paying them less than minimum wage and taking a "tip credit" for the first week of their employment as a server.  Although the tip credit notice is eventually placed on the servers' paystubs, such notice is late for the first week of the servers' pay because the servers had already worked at least a week before being notified about Cracker Barrel's payment scheme.

4. Third, servers are often required to work off-the-clock.  This may be either before their shifts starts or after they clock-out.  They may be performing non-tipped duties during these time periods or being forced to wait at the store in order to collect their tips.  This is blatant off-the-clock work, where servers are being paid nothing for this time.

## PARTIES

5. Defendant, Cracker Barrel Old Country Store, Inc., is a Tennessee corporation with its principal offices located at 305 Hartman Drive, Lebanon, TN, 37807.  It regularly conducts business in several states throughout the country, including Arizona. Cracker Barrel has already made an appearance in this case via its attorneys of record.

---

[1]    https://investor.cbrlgroup.com/news-releases/news-release-details/cracker-barrel-reports-second-quarter-fiscal-2022-results

6.  Plaintiff Andrew Harrington was employed by Defendant as a tipped employee at one of Defendant's Cracker Barrel restaurants in Ohio within the past three years preceding the filing of this class action lawsuit (Andrew Harrington's Consent to join this collective action was previously filed in *Docket #5-1, p. 25*.)

7.  Plaintiff Katie Liammaytry was employed by Defendant as a tipped employee at one of Defendant's Cracker Barrel restaurants in North Carolina within the past three years preceding the filing of this class action lawsuit (Katie Liammaytry's Consent to join this collective action was previously filed in *Docket #3-1, p. 62*.)

8.  Plaintiff Jason Lenchert is employed by Defendant as a tipped employee at one of Defendant's Cracker Barrel restaurants in Florida within the past three years preceding the filing of this class action lawsuit (Jason Lenchert's Consent to join this collective action was previously filed in *Docket #3-1, p. 61*).

9.  Plaintiff Dylan Basch is employed by Defendant as a tipped employee at one of Defendant's Cracker Barrel restaurants located in Arizona within the past three years preceding the filing of this class action lawsuit.  He has worked at two different Cracker Barrel stores located in Arizona since 2019.  (Dylan Basch's Consent to join this collective action is attached as *Exhibit #1*).  Furthermore, based on the Court's prior rulings regarding potential arbitration, Basch's declaration confirming he is not bound to arbitration is attached as *Exhibit #2*.

10. The above-referenced plaintiffs are collectively referred to as "Named Plaintiffs."

4

## PUTATIVE CLASS MEMBERS

11. The class of similarly situated employees or putative class members ("Putative Class Members") sought to be certified is defined as follows:

> All current and former tipped employees (servers, waiters, and waitresses) of Cracker Barrel Old Country Store, Inc. who work (or have worked) at Cracker Barrel Old Country Store restaurants ("Cracker Barrel restaurants") in the past three years and are not subject to arbitration.[2]

## JURISDICTION AND VENUE

12. The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' FLSA claims is based on 29 U.S.C. § 216 (b) and 28 U.S.C. § 1331. Three of the Named Plaintiffs were originally identified as opt-in plaintiffs before Defendant made its initial appearance in this case.[3]

13. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Basch works for Defendant in this District, Defendant regularly conducts business in this District, Defendant has already consented to venue in this district, and

---

[2] This definition has been modified to comply with the Court's prior ruling that only servers not subject to arbitration may have their claims adjudicated in this court. Also in compliance with the Court's rulings, a list of opt-in plaintiffs who are subject to arbitration was filed on March 9, 2022. *See Docket #60.*

[3] The addition of a new named plaintiff, Basch (who works for Defendant in Arizona), resolves the personal jurisdiction concern raised in the Court's order issued on July 22, 2022. *Docket #73.* Defendant has conceded that it cannot challenge personal jurisdiction if there is an Arizona named plaintiff. *See Docket #72, p. 3.* Given that Basch is now also a Named Plaintiff, all other plaintiffs (including the other Named Plaintiffs and all opt-in plaintiffs also not subject to arbitration) should be allowed to continue pursuing their claims in this lawsuit. *See Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022).

several plaintiffs who are not bound to arbitration are already part of this lawsuit. Furthermore, Defendant has approximately 14 stores in Arizona with hundreds of employees.  Named Plaintiff Dylan Basch has also worked at two stores in Arizona as a server and is currently employed by Defendant in Arizona.

## FACTUAL BACKGROUND

### The FLSA applies to Cracker Barrel

14. Cracker Barrel is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(b), (r).

15. Cracker Barrel is an employer as defined by the FLSA.  29 U.S.C. § 203(d).

16. Cracker Barrel has annual gross business of over $500,000.

17. Cracker Barrel employed Named Plaintiffs at all relevant times within the meaning of the FLSA. 29 U.S.C. § 203(g).

18. In performing their duties for Cracker Barrel, Named Plaintiffs were engaged in commerce or in the production of goods for commerce.

### FLSA Tip Credit

19. Section 3(m) of the FLSA allows restaurants to pay its tipped employees less than minimum wage if certain conditions are met. The gross amount of money, below minimum wage, withheld from a server's pay is called a "tip credit."

20. The FLSA tip credit privilege, however, has explicit requirements that employers must follow.

21. As a condition of the privilege of paying servers less than minimum wage, the FLSA requires that they must be doing work capable of making tips. The FLSA

allows restaurants to oblige its servers to do some non-tipped work that is related to their occupation, but that work may not exceed 20% of the employee's time (the "80/20 Rule").  Furthermore, servers cannot spend any time performing duties that are unrelated to their occupation.  Finally, as of December 28, 2021, servers paid on a tip-credit rate cannot spend more than 30 continuous minutes on non-tipped duties even if their total time spent on non-tipped work is 20% or less.

22. Cracker Barrel, like most restaurants, has two classifications of pay for its non-management employees—tipped and non-tipped.[4]

23. Servers are tipped employees. Cracker Barrel pays its servers less than minimum wage in most of the states in which it operates, including Arizona. The FLSA allows Cracker Barrel to do this under the tip credit scheme.

24. Each state determines its tip credit. For example, Arizona's tip credit is $3.00 an hour. Its minimum wage is $12.80 an hour. Under the FLSA, then, Cracker Barrel in Arizona subtracts $2.95 from $12.00 and pay its servers $9.05 an hour.  As other examples, in Tennessee, Alabama, Texas, South Carolina, and Mississippi, servers are paid as little as $2.13 an hour as the Federal minimum wage is $7.25.

**Cracker Barrel requires its servers to do excessive non-tipped work.**

25. Cracker Barrel's servers, including those who work or worked in Arizona, spend more than 20% of their work time performing non-tipped duties, described as follows.

---

[4] Non-tipped employees are paid the either the federal minimum or their state's minimum wage, whichever is greater.

a) <u>Cracker Barrel obliges its servers to do excessive "side-work."</u>

26. Cracker Barrel provides each store with a set of "side-work" charts. These charts are created by Cracker Barrel's corporate office and are **uniform across all stores**, including those in Arizona.

27. During a shift, a server is assigned one or more side-work duties to perform.

28. The following is a list of the side-work duties that must be completed during and after each shift:

   i.   Primary Delfield:[5] This is the condiment and garnish refrigerator housed along the server line.[6] Servers must clean and restock every garnish and dressing in the Primary Delfield.

   ii.   Secondary Delfield: This is a secondary condiment and garnish refrigerator housed next to the Primary Delfield. Servers must clean and restock every garnish and dressing in the Secondary Delfield.

   iii.   Tea and Soda Stations: There are two Tea and Soda Stations—one each end of the server line. The Stations must be restocked (i.e., tea must be made, and soda mix, ice, and drink garnishes must be kept stocked) and kept clean during the day. At the end of the day, the tea urns must be thoroughly cleaned with urn cleaner, and the soda fountains must be broken down and

---

[5] A "Delfield" is the industry term for a brand of waist-high refrigerators.

[6] The server line is the area in the back of house in which the servers get their customer's food and drink.

cleaned. The nozzles for both the Tea and Soda Stations must be soaked in cleaner overnight.

iv.    Coffee Stations: Industrial coffee and latte machines must be kept stocked with coffee, hot tea, gallons of milk, espresso beans, syrups and sauces, iced tea bags, coffee liners, and coffee mugs. The machines must be cleaned throughout the day, and the pots must be cleaned with urn cleaner. The adjacent sink and trash bin must also be cleaned. The serving trays kept near the Stations must be wiped down throughout the day. At night, the servers must send the trays to the dish room for cleaning.

v.     Milk Delfield: Servers must keep milk stocked and rotated to prevent spoilage. Cider, lemonade mix, and orange juice must be kept stocked. The Milk Delfield must be kept clean, inside and out.

vi.    Root Beer and Juice Pulls: root beer, juice, and single serve beverages (e.g., Stewart's Orange Soda) must be kept in stock.

vii.   Bread Toaster, and Cereal: The bread toaster and warmer must be kept clean and bread and cereal must be kept stocked.

viii.  Server and Prep Server Pass "Thru" Windows: The window in which freshly cooked food is placed to keep warm must be kept clean and wiped down. The window through which cold items (e.g., salads) must be kept cleaned and wiped down. The area in which plates are kept must also be cleaned.

ix.    Condiment Shelves: There are two Condiment Shelves—one at each end of the server line. Servers must rotate condiments and keep them cleaned and

stocked. During COVID, each condiment bottle must be sanitized after every use and at the end of the shift.

   x.   To Go and Silverware Stands: There is one To Go station. This station contains the necessary containers, lids, and bags for carry out orders. This station must be kept cleaned and stocked throughout the day.

  xi.   Juice Machine: The juice machine (which contains orange juice and lemonade in separate hoppers) must be cleaned and stocked throughout the day. At night, the machine must be broken down and each part must be washed by hand and the machine must be reassembled.

  xii.   Break Room and Bus Carts: The Break Room must be swept, cleaned, and any trash must be thrown away. The Bus Carts (the carts which hold the tubs in which dirty dishes are deposited) must be wiped down thoroughly.

 xiii.   Preparing Food: After fried chicken was permanently added to Cracker Barrel's menu two years ago, servers had to make biscuits, desserts, and salads because the back-of-house employees were preoccupied with frying chicken.

 xiv.   Washing Dishes: Servers often have to wash silverware prior to rolling them in napkins.

29. None of these tasks are tipped-duties, and none of them are related to the servers' occupation.

b) <u>Cracker Barrel requires its servers to maintain and deep clean their serving sections.</u>

30. Servers operate in each dining room in "sections" of tables.

31. Servers are required to keep their tables clean, the sugar caddies filled, and keeping the salt and pepper shakers filled and wiped down. Servers must also sweep their sections throughout the day and at the end of the shift.

32. Before the Microsoft AX ("MAX") program was implemented (discussed below) servers would typically have 2-3 table sections on the weekends. After MAX implementation, servers are responsible for anywhere from 4-6 tables.

33. Post-MAX implementation, servers spend more time cleaning their larger sections to clean, and during which, they cannot generate tips.

34. In some locations, servers are now required to mop their sections at some point during the shift.

35. None of these tasks are tipped-duties, and none of them are related to the servers' occupation.

c) <u>Cracker Barrel obliges its servers to perform MAC duties to maintain the restaurants.</u>

36. Manager Assigned Cleaning or "MAC" duties are separate from "side-work."

37. MAC duties are also non-tipped duties and they are different from, and in addition to, what Cracker Barrel considers side-work duties.

38. MAC duties are assigned to each shift. Each server must pitch-in to complete the MAC duty.

39. The following is a list of MAC duties assigned to each day's servers:

i.    Cleaning the lantern globes on each table either glass cleaner or soap and water;

ii.    Scraping gum from the underside of the tables in each server's section;

iii.    Deep clean all tables and chairs including crossbars and legs;

iv.    Deep clean table tents (promotional insert holders) and replace soiled promotional inserts;

v.    Deep clean all walls on server aisle including behind tables and equipment;

vi.    Emptying and deep clean of salt and pepper shakers;

vii.    Sugar caddies must be emptied and deep cleaned at night. They are filled the following morning;

viii.    Refill cruets (condiment dispensers for vinegar);

ix.    Emptying and sanitizing the server line ice bins;

x.    Deep clean Delfields inside and out;

xi.    Deep clean all refrigerator gaskets;

xii.    Deep clean Coke machine, juice machine, and tea machine;

xiii.    Deep clean tea urns and coffee storage bins (holds bags of loose coffee grounds)

xiv.    Soak soda fountain nozzles in Urnex solution; and

xv.    Remove all glass and cup racks then clean and polish sides of rack stand with all-purpose degreaser.

40. None of these tasks are tipped-duties, and none of them are related to the servers' occupation.

d)      <u>Cracker Barrel requires its servers to roll silverware.</u>

41. Cracker Barrel supplies its patrons with silverware in "rolls" containing a fork, spoon, and knife.

42. Servers are required to create these rolls—called "rolling silverware"—every shift.

43. Rolling silverware takes a significant amount of time to complete.

44. This is not a tipped duty.

45. Servers are even punished by being required to roll extra silverware if they do not meet management's alcohol sales goals.  *See Exhibit #6.*

e)      <u>Cracker Barrel has started to cross-train its servers on additional non-tipped duties.</u>

46. Recently, servers have started to actually be cross-trained on cooking positions, such as back up cook and salad and dessert preparation.  These are non-tipped duties, and none of them are related to the servers' occupation.

f)      <u>In the last five years, Cracker Barrel has significantly increased the amount of non-tipped duties servers must perform.</u>

47. Prior to 2017, Cracker Barrel exclusively used a computer program called MICROS to relay food orders entered by servers to the kitchen.

48. In 2017, Cracker Barrel began implementing a program called Microsoft AX or "MAX." The MAX program was designed to replace MICROS and improve the efficiency of Cracker Barrel's stores as a whole. One of the goals of this program was to reduce the number of servers needed per shift by issuing electronic tablets to servers so they could "ring in" customers' food orders and increase their efficiency.

49. The MAX program created a new position called "server assistants." The server assistants were intended to do what traditionally what was server's side-work.

50. But Cracker Barrel eliminated the server assistant position from the MAX program to reduce labor costs. With Cracker Barrel's implementation of the MAX program without server assistants, there are less servers to do the side-work each shift and each server must do more side-work, on average, than before.

51. It is common for servers to be assigned more than one of the side-work duties outlined above in addition to the other non-tip generating duties discussed above.

52. Furthermore, servers often have to run (or deliver food) for other servers and/or "to go" orders.  They do not get tips for this work.  In fact, employees regularly working the "to go" orders are paid at least minimum wage, but servers still often end up doing their work while paid on a tip-credit basis.

53. Cracker Barrel reduced the number of servers even further when the COVID pandemic struck in early 2020. During the pandemic, Cracker Barrel increased the non-tipped duties that the reduced number of servers have to do. For example, at closing time, servers have "deck brush" (a more-time intensive form of mopping) the server alley and food preparation area. Servers are also being required to do enhanced sanitizing of all condiments after each customer uses them.

54. Cracker Barrel used to have a "night-maintenance" position, which would be an employee cleaning stores overnight while it was closed.  Starting in 2020, that position was eliminated and servers were then required to fulfill the job duties of the "night-maintenance" position.

14

55. During COVID, it also became essential to spend much more time cleaning or disinfecting almost everything in the restaurant, repeatedly.  Cracker Barrel took advantage of the servers' low pay rather than hiring additional employees who should have been paid at least minimum wage.  The only purpose was to increase profits at the detriment of the servers and potential employees.  Even if Cracker Barrel hired just three extra minimum wage employees per store to perform non-tipped work (instead of requiring servers to perform these jobs at below minimum wage), that could have resulted in about 2,000 more jobs nationwide and allowed servers to spend more time on tipped duties.  Instead, servers are spending more time on non-tipped duties and ultimately earning less money on an hourly basis prior to COVID.  Cracker Barrel chose profits over people.

56. Examples of servers performing other non-tipped duties are attached as *Exhibit #3*.

       g)    <u>Cracker Barrel willfully chose to ignore its violations of the 80/20 Rule</u>.

57. Upon information and belief, in or around 2016 or 2017, Joe Walsh, a member of Cracker Barrel's upper management, removed a draft provision to the Cracker Barrel store operations manual requiring Cracker Barrel store managers to ensure employees were in compliance with the 80/20 Rule.

58. Upon information and belief, around the same time Joe Walsh removed the 80/20 Rule provision from the store operations manual, corporate employees at the home office were actively discussing the 80/20 Rule.

59. Cracker Barrel, therefore, knew it was violating the 80/20 Rule yet it chose to maximize profits while overworking its servers.

60. Furthermore, Cracker Barrel does not track the amount of time servers spend on tipped duties versus non-tipped duties.  It is the employer's responsibility to track such work time.

**Cracker Barrel does not properly inform its servers that it will take a tip-credit until two weeks after they have already worked under the tip credit exception.**

61. If an employer is to utilize a proper tip credit exemption to the minimum wage requirements of the FLSA, it is required to provide appropriate notice to these employees with specific details. These are articulated in section 3(m) of the FLSA: (1) the amount of sub-minimum wage cash wage that is to be paid to the respective tipped employee; (2) the amount by which wages of the respective tipped employee are decreased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the Section 203(m) notice.

62. The FLSA requires that the tip credit notice be provided *before* an employer takes advantage of it.

63. But Cracker Barrel does not provide notice before each server begins performing tipped work.

64. Servers do not get notice of the tip credit until two weeks after starting tipped work. Cracker Barrel servers receive check-stubs every week for work performed the

previous week.  For example, an employee is paid on December 31, 2020 for the time he/she worked from December 19-25, 2020.

65. The servers' check-stubs provide a tip credit notice.  But the first notice is sent too late.

66. Therefore, the first two weeks an employee works as a server, he/she has not been provided the proper tip credit notice required by Section 203(m) of the FLSA.  This violation applies to every Cracker Barrel employee and is a uniform injury.

**Cracker Barrel requires its servers to work off-the-clock.**

67. Hourly employees, such as servers, are required to be paid for all hours worked.

68. Cracker Barrel is obligated to maintain accurate time records of all hours its servers work.

69. But servers are often required to work off-the-clock, so Cracker Barrel's time records are actually not accurate.  Examples of working of the clock include, but are not limited to the following:

  i.   Servers often have to clock-out before being paid their tips.  While waiting, they remain at the store, usually interacting with customers and employees or performing various job duties.  The amount of time any particular server spends waiting to be paid his/her tips frequently ranges from 10 – 45 minutes per shift. Cracker Barrel has refused to implement the direct deposit of server's tips to prevent servers from waiting off-the-clock to receive their tips.

ii.   Servers are often required to clock-out and then perform various non-tipped duties after their shifts are officially over.

iii.   Servers are often required to help with non-tipped duties before clocking-in at the start of their shifts.

70. Perhaps most troubling is that Cracker Barrel takes advantage of high-school aged minors who are limited in the amount of time they can work based on state laws. For example, a state may limit a minor to working a set number of hours per day or require a break after a certain amount of time.  Cracker Barrel knows this and requires such children to clock-out yet continue working.

71. *Exhibit #4* to this Amended Complaint shows an example of Cracker Barrel's mistreatment of a currently employed opt-in plaintiff in Kentucky, which does not allow a minor to work more than five hours without a break.  As shown, this employee is automatically (and involuntarily) clocked-out at the five-hour mark and immediately clocked back in.  Similarly, Kentucky law prevents minors from working more than six hours on a school day and not more than eight hours on a non-school day; however, as shown in that same exhibit, Cracker Barrel violates these rules.  *See id*.  This is an example of Cracker Barrel willfully violating wage laws.

72. *Exhibit #5* shows an example of situations where employees are not paid for their actual work times.  In this exhibit, the employee's wage statement is less than her actual time records.  It is presumed that the reason for these involuntary deductions is to keep labor costs low so that investors can benefit at the expense of employees.

73. Cracker Barrel does not maintain any records of this unpaid time that servers spend working off-the-clock. Furthermore, Cracker Barrel may often automatically clock-out servers after a set amount of time, regardless as to whether such servers are working more than their scheduled shift or working a double-shift.

74. Cracker Barrel should be paying these servers at least minimum wage for this unpaid work.

### COLLECTIVE ACTION ALLEGATIONS

75. Numerous other individuals who worked for Cracker Barrel were paid in the same manner, performed similar work, and were not properly compensated as required by the FLSA. Although the specific amount of damages may vary depending on the specific state any particular plaintiff worked (based on the amount of tip credit), Cracker Barrel's illegal policies and practices were applied to all employees working in states where Cracker Barrel attempted to utilize a the tip credit under section 3(m) of the FLSA. Therefore, Cracker Barrel's FLSA violations result from systemic policies and practices which are not dependent on the personal circumstances of Putative Class Members.

76. Accordingly, Named Plaintiffs bring this action on behalf of themselves and other similarly situated employees as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206 and 216(b).

77. The claims under the FLSA may be pursued by other similarly situated employees who opt-in to this case under 29 U.S.C. § 216 (b).

78. In accordance with the Court's prior rulings (*Docket #47 and #55*), Plaintiffs are only proceeding in this lawsuit on behalf of those not subject to arbitration and have identified those who are subject to arbitration in a prior filing. *See Docket #60*. In addition to the Named Plaintiffs, there are several current opt-in plaintiffs who are not subject to arbitration.[7]

79. Named Plaintiffs have no interest contrary to, or in conflict with, the Putative Class Members, as they all have an interest in obtaining wages owed to them under the FLSA. Also, Named Plaintiffs are not subject to arbitration.

80. A collective action is superior to other available means for fair and efficient adjudication of the lawsuit.

81. Absent this action, many Putative Class Members will not be compensated for their damages, and Cracker Barrel will have unjustly benefitted for violating the FLSA.

82. Notices for approximately 400 opt-in plaintiffs have been filed,[8] but there are possibly over 100,000 similarly situated tipped employees that could comprise the class.

---

[7] These would include at least the following servers: 1) those who signed ADR Agreements as minors and/or are currently minors, 2) for whom Defendant did not obtain any ADR sign-offs, and 3) those who had previously signed-off on the ADR Agreement, their employment with Defendant ended, and they later came back to work for Defendant yet did not re-sign the ADR Agreement.

[8] These did include notices for those who are subject to arbitration based on the Court's prior ruling; however, plaintiffs have clarified who is subject to arbitration. *Docket #60*. Also, opt-in notices for four more plaintiffs, who are also not subject to arbitration, are being filed contemporaneously with this amended complaint.

83. Named Plaintiffs' claims are typical of the claims of the class.  Named Plaintiffs and Putative Class Members were subjected to the same operational, compensation, and timekeeping policies and practices that are uniform across all stores, including Defendant's: a) failure to provide them with a timely Section 203(m) tip credit notice, b) failure to pay them the applicable minimum wage for non-tipped work unrelated to the servers' occupation and non-tipped work which exceeded twenty percent of their total time worked, and c) requirement for them to work off-the-clock.

84. Common questions of law and fact exist as to the class as to the class which predominate over any questions only affecting other members of the class individually and include, but are not limited to, the following:

   i. Whether Named Plaintiffs and Putative Class Members were required to complete an excessive amount of non-tipped work;

   ii. Whether Named Plaintiffs and Putative Class Members were given timely notice that Defendant was taking a tip credit prior to their employment;

   iii. Whether Named Plaintiffs and Putative Class Members worked off-the-clock;

   iv. Whether Named Plaintiffs and Putative Class Members worked in violation of the FLSA standards; and

   v. Whether Cracker Barrel willfully violated the FLSA.

## COUNT I

**Cracker Barrel violated the FLSA by forcing servers to perform non-tipped duties unrelated to their occupation, other non-tipped duties in excess of 20% of their working time even if such duties are related to their occupation, and/or spending more than 30 continuous minutes of non-tipped duties after December 28, 2021.**

85. Named Plaintiffs, on behalf of themselves and other members, repeat and re-allege each and every allegation above as if fully set forth herein.

86. At all times relevant herein, Cracker Barrel has been and continues to be an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

87. At all times herein, Cracker Barrel employed (and/or continues to employ) Named Plaintiffs and Putative Class Members.

88. At all times relevant and based on the aforementioned allegations, Cracker Barrel has had a centralized, uniform and common plan, policy and practice of willfully refusing to pay Plaintiffs and other members of the class minimum wage for: a) time spent in performing non-tipped duties unrelated to the servers' occupation; b) time spent in performing non-tipped duties in excess of twenty percent of their work time without receiving the applicable minimum wage; and/or c) spending more than 30 minutes of continuous non-tipped duties after December 28, 2021.

89. At all times relevant, Cracker Barrel has had actual and/or constructive knowledge of refusing to pay Named Plaintiffs and Putative Class Members the applicable minimum wage for the above-referenced violations.

90.  As a result of Cracker Barrel's willful failure to compensate Named Plaintiffs and Putative Class Members appropriately, it has violated and continues to violate the FLSA.

91. Named Plaintiffs and Putative Class Members are therefore entitled to compensation for unpaid minimum wages at an hourly rate required by the FLSA for: a) all the time spent performing unrelated, non-tipped duties; b) all the time spent performing related non-tipped producing job duties in excess of twenty percent of their work time; c) all the time spent that is more than 30 minutes of continuous non-tipped duties after December 28, 2021; d) an additional amount as liquidated damages; and e) interest, costs, and reasonable attorney's fees for the three-year statutory period under the FLSA.

## COUNT II
### Cracker Barrel violated the FLSA by not providing a timely tip-credit notice.

92. Named Plaintiffs, on behalf of themselves and Putative Class Members, repeat and re-allege each and every allegation above as if fully set forth herein.

93. Named Plaintiffs and Putative Class Members were paid hourly rates of pay below the applicable minimum wage.

94. Pursuant to Cracker Barrel's aforementioned failure to provide Named Plaintiffs and Putative Class Members with timely notice of the tip credit requirements under Section 203(m), it has disqualified itself from being eligible for such plan for the first two weeks each server began working as a tipped employee.  Therefore,

Defendant is liable to Named Plaintiffs and Putative Class Members for all hours worked within weekly pay periods during all times material at the applicable minimum wage.

95. At all times relevant, Cracker Barrel has had actual or constructive knowledge of failing to provide Named Plaintiffs and Putative Class Members and those similarly situated of the aforementioned Section 203(m) four-point notice relating to its tip credit compensation plan.

**COUNT III**
**Cracker Barrel violated the FLSA by not paying servers for**
**off-the-clock work.**

96. Named Plaintiffs, on behalf of themselves and other members, repeats and re-alleges each and every allegation above as if fully set forth herein.

97. At all relevant time periods, Cracker Barrel employed and continues to employ the Named Plaintiffs and Putative Class members within the definition of the FLSA.

98. The FLSA requires that employees are paid for all hours worked and at one and one-half times their "regular rate" for all hours worked in excess of 40 hours in a workweek. The "regular hourly rate of pay of an employee is determined by dividing his or her total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him or her in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

99. Cracker Barrel violated the FLSA by failing to pay the Named Plaintiffs and Putative Class Members and all other similarly situated employees for all

compensable hours worked at the applicable minimum wage rates for all hours worked in a workweek, including overtime hours worked, if any.

100.    Specifically, as discussed above, Cracker Barrel required employees to perform off-the-clock work including, but not limited to, side work, MAC duties, and waiting in line to collect their tips without being paid at the applicable minimum wage rates for both regular and overtime hours.

101.    Cracker Barrel also apparently deducts time when actually paying servers, suggesting that its own wage records may not be accurate.  *See Ex. #5.*

102.    At all relevant times, Cracker Barrel had actual and/or constructive knowledge of failing to compensate Named Plaintiffs and Putative Class Members at the applicable minimum and overtime wage rates.

**COUNT IV**
**Willful violation of the FLSA and lack of good faith.**

103.    Cracker Barrel's FLSA violations referenced above, and as follows, constitute a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

104.    Cracker Barrel did not act in good faith when attempting to comply with the FLSA.

105.    As an example of Cracker Barrel's willful violations and/or lack of good faith with respect to complying with the FLSA, Named Plaintiffs incorporate the above-referenced facts, and especially note the following facts which further support the FLSA violations:

i.    Cracker Barrel operates in approximately 45 states, including California and other states that do not allow a tip credit and/or otherwise require additional wage-related benefits for employees.  Upon information and belief, Cracker Barrel is in compliance with FLSA requirements in California and, therefore, is aware of the laws that require compliance with the tip credit and preventing off-the-clock work. However, it chooses not to follow the law with respect to Named Plaintiffs and Putative Class Members because of the financial incentive.

ii.   Cracker Barrel has been cross-training servers to perform non-tipped duties, taking advantage of the COVID pandemic to increase the amount of time servers spend performing non-tipped duties at sub-minimum wage rates and to reduce the number of back-of-house employees that it has to employ at minimum wage.

iii.  A former Cracker Barrel Store Operations Supervisor has confirmed that upper management had discussions internally about potential pay-related violations relating to the tip-credit exemption; however, nothing was done to fix the problem.  This same former employee was privy to discussions amongst upper management in about 2016 or 2017 referencing concerns about servers having to clock-out to receive their tips, which resulted in off-the-clock work.  Despite this concern, no written policies or written instructions were created or otherwise provided in order to prevent such an FLSA violation.

iv.   Cracker Barrel conducted a third-party labor audit in approximately 2014 that apparently determined various tasks could be performed differently, thus reducing the amount of money allocated to each store for labor.  This directly resulted in servers performing more non-tipped duties.

v.   Cracker Barrel requires its managers to try to circumvent child labor laws and not pay employees for all their actual work time.  Documented examples were referenced above and are attached as *Exhibit #4 and #5*.  Although this is not necessarily a direct FLSA violation, this is an example of Cracker Barrel being aware of wage laws, yet purposely choosing to violate them.

vi.   Cracker Barrel chooses not to hire more prep workers or bussers (who would earn at least minimum wage), yet forces servers to perform the work that would normally be performed by prep workers and bussers.

vii.   Cracker Barrel chooses not to track the amount of time servers spend on tipped duties versus non-tipped duties.

viii.   Cracker Barrel purposely limits the labor budget for each store, such that individual store managers have no choice but to require their underpaid servers to work in violation of the FLSA.

ix.   Moreover, Cracker Barrel issues significant yearly bonuses, sometimes well into the five figures, depending on whether managers meets their labor budget.  Accordingly, this creates a perverse incentive for managers to ignore the servers' rights under the FLSA.  Cracker Barrel benefits from this

scheme, so it does not implement a meaningful FLSA compliance program as managers are often completely ignorant of the FLSA's requirements.

106.    Due to Cracker Barrel's aforementioned willful FLSA violations and lack of a good faith basis in committing such violations, Named Plaintiffs and the other members of the class are entitled to recover from Cracker Barrel compensation for unpaid minimum wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216 (b).

## **PRAYER FOR RELIEF**

Whereas, Named Plaintiffs, individually, and/or on behalf of themselves and all other similarly situated members of the class, request this Court to grant the following relief against Cracker Barrel:

A.   Designation of this cause as a collective action on behalf of the class and promptly issue notice pursuant to 29 U.S.C. § 216(a), apprising class members of the pendency of this action and permitting other members of the class to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

B.   An award of compensation for unpaid minimum wages to Named Plaintiffs and other members of the class at the applicable minimum wage rate of pay and, any related overtime at the applicable FLSA overtime rate of pay;

C.   An award of liquidated damages to Named Plaintiffs and other members of the class; or in the alternative an award of prejudgment interest;

D. An award of post-judgment interest at the applicable legal rate to Named Plaintiffs and other members of the class;

E. An award of costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees to Named Plaintiffs and other members of the class;

F. A ruling that the three-year statutory period for willful violations under the FLSA shall apply in this action; and

G. Such other general and specific relief as this Court deems just and proper, including any equitable or injunctive relief such that it will prevent Cracker Barrel from continuing its illegal scheme in the future.

### **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 10, 2022            Respectfully submitted,

**SUD LAW P.C.**

*/s/ Nitin Sud*
Nitin Sud
*Attorney for Plaintiffs and those similarly situated*
*(pro hac vice)*

**Law Offices of Monika Sud-Devaraj, PLLC**

*/s/ Monika Sud-Devaraj*
Monika Sud-Devaraj
*Attorney for Plaintiffs and those similarly situated*

1

2                        <u>CERTIFICATE OF SERVICE</u>

3          I hereby certify that a true and correct copy of the following was served upon the

4    following counsel of record via the Court's CM/ECF filing system on August 10, 2022:

5
           William W. Drury
6          Miles M. Masog
7          RENAUD COOK DRURY MESAROS, PA
           One North Central, Suite 900
8          Phoenix, Arizona 85004-4417
9          mmasog@rcdmlaw.com
           docket@rcdmlaw.com
10         mbango@rcdmlaw.com

11
           James M. Coleman
12         CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
           12500 Fair Lakes Circle, Suite 300
13         Fairfax, Virginia 22033-3804
14         jcoleman@constangy.com

15                                    */s/ Nitin Sud*
16                                    Nitin Sud

17

18

19

20

21

22

23

24

25

26

27

28