**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ashley Gillespie, et al., | No. CV-21-00940-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Cracker Barrel Old Country Store Incorporated, | |
| Defendant. | |

This action arises out of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). Plaintiffs Andrew Harrington ("Harrington"), Katie Liammaytry ("Liammaytry"), Jason Lencerht ("Lencerht"), and Dylan Basch ("Basch") (collectively "Plaintiffs") have filed a Second Amended Motion for Conditional Certification ("Second Motion to Certify") (Doc. 76).[1] Defendant Cracker Barrel Old Country Store Incorporated ("Cracker Barrel") has filed a Motion to Compel Individual Arbitration and Dismiss Second Amended Complaint with Prejudice ("Motion to Dismiss and Compel Arbitration") (Doc. 77).[2] The Court must decide whether the matter should be conditionally certified as a collective action under the FLSA notwithstanding Cracker Barrel's Arbitration Agreement. For the following reasons, the Court grants in part Plaintiffs' Second Motion to Certify and denies Cracker Barrel's Motion to Dismiss and Compel Arbitration.

---

[1] The matter is fully briefed. (*See* Response at Doc. 78 and Reply at Doc. 79).

[2] The matter is also fully briefed (*See* Response at Doc. 80 and Reply at Doc. 81).

1    **I.    Background**

2        This matter concerns Plaintiffs' ongoing collective efforts against Cracker Barrel

3    for allegedly violating provisions of the FLSA that govern wages for tipped-employees.

4    Plaintiffs have filed three complaints: the "Original Complaint" (Doc. 1), the First

5    Amended Complaint ("FAC") (Doc. 57), and the Second Amended Complaint ("SAC")

6    (Doc. 74).  Plaintiffs previously attempted to certify this matter as a collective action under

7    the FLSA, but were unsuccessful due to Cracker Barrel's Arbitration Agreement (the

8    "Agreement") (Doc. 77-3 at 2–6).  (*See generally* Doc. 47).  For context, the Court provides

9    a brief overview of each complaint.

10        **A.    The Original Complaint (Doc. 1) and the Court's 2021 Order (Doc. 47)**

11        The named plaintiffs in the Original Complaint were Ashley (Jade) Gillespie

12   ("Gillespie"), a former Arizona Cracker Barrel employee; Tonya Miller, a current South

13   Carolina Cracker Barrel employee; Tami Brown, a current North Carolina Cracker Barrel

14   employee; and Sarah Mangano, a current Pennsylvania Cracker Barrel employee

15   (collectively the "Original Plaintiffs").  (Doc. 1 at ¶¶ 6–9).  In its November 12, 2021,

16   Order (the "2021 Order"), the Court found Cracker Barrel's Arbitration Agreement was

17   valid and enforceable and that the Original Plaintiffs were subject to the Agreement.

18   (Doc. 47 at 9).  Accordingly, the Court granted Cracker Barrel's First Motion to Dismiss

19   and Compel Arbitration (Doc. 21) and denied the Original Plaintiffs' First Motion for

20   Conditional Certification (Doc. 8) without prejudice.  (Doc. 47).  The Original Plaintiffs

21   were dismissed so that they may pursue their claims in arbitration.  (*Id*. at 10).  However,

22   the Court permitted them leave to file a first amended complaint because some opt-in

23   plaintiffs were capable of voiding the Agreement due to their status as minors. (*Id*.)

24        **B.    The First Amended Complaint (Doc. 57) and the Court's 2022 Order**
25   **(Doc. 73)**

26        The named Plaintiffs in the FAC were Harrington, a former Ohio Cracker Barrel

27   employee; Liammaytry, a former North Carolina Cracker Barrel employee; and Lencerht,

28   a current Florida Cracker Barrel employee (collectively the "FAC Plaintiffs").

(Doc. 57 at ¶¶ 6–8).  All of the FAC Plaintiffs were alleged to be minors when they signed the Agreement, but neither of them worked in any of the fourteen Cracker Barrel stores in Arizona.  (Doc. 73 at 2, 5).  Accordingly, in its July 22, 2022, Order (the "2022 Order"), the Court granted Cracker Barrel's Motion to Dismiss (Doc. 62) for lack of personal jurisdiction.  (Doc. 73).  It also denied as moot the FAC Plaintiffs' Amended Motion for Conditional Certification (Doc. 58) and Motion for Partial Dismissal (Doc. 60).  (*Id.*)

### C.   The Operative Second Amended Complaint (Doc. 74)

In their SAC—presumably to address the personal jurisdiction concerns and deficiencies of the FAC—Plaintiffs added Basch as a fourth plaintiff with Harrington, Liammaytry, and Lencerht.  (Doc. 74 at ¶¶ 6–9).  Basch has worked in the Goodyear and Chandler Cracker Barrel restaurants located in Arizona since March 26, 2019, and continues to do so.  (Doc. 74-2 at ¶ 2; Doc. 77 at 6).  Cracker Barrel records indicate that Basch was born in January 2003 (Doc. 77-1 at ¶ 9), thus he was sixteen-years-old when he joined Cracker Barrel.  (Doc. 74-2 at ¶ 4).

Basch was onboarded through Cracker Barrel's routine online employee training program, during which he was presented with Cracker Barrel's Arbitration Agreement through the "ADR[3] Sign-Off" module.  (Doc. 77-1 at ¶¶ 3, 6).  Cracker Barrel's Human Resources Director explained that "[o]nce an employee is presented with the Arbitration Agreement to read and review, he or she is instructed to 'Please close this document and mark "complete" to signify you have read, understood and will comply with the agreement.[']  If the employee closes the [] Agreement, the employee is presented with a screen that allows the employee to click 'Mark Complete.'  Once the employee clicks 'Mark Complete,' [Cracker Barrel] makes a record of the date and time at which he or she agreed to comply with the [] Agreement." (*Id.* at ¶ 7).

Cracker Barrel's records  reflect that Basch electronically completed the Agreement on October 19, 2019, seven months after he started employment.  (Doc. 77-2).  On August 10, 2022, Basch submitted the SAC to this Court with an attached declaration stating: "I

---

[3] ADR stands for "Alternative Dispute Resolution."

have still not seen any such agreement forcing me to arbitrate claims against Cracker Barrel (rather than pursuing in court), but to any extent such an agreement exists, I am canceling or voiding it." (Doc. 74-2)  Basch purports to void the Agreement with Cracker Barrel on the basis that he was a minor when he allegedly entered into the Agreement.

Plaintiffs are all current or former tipped-employees and bring the following four counts against Crack Barrel in the SAC:

Count I for failure to pay tipped-employees minimum wages for work performed on non-tipped duties that exceed 20% of their work time under 29 U.S.C. §§ § 203(m), 206;

Count II for failure to timely inform tipped employees of the tip credit requirements under 29 U.S.C. § 203(m);

Count III for failure to pay tipped-employees minimum wages for "off-the-clock" work under 29 U.S.C. §§ 206, 207; and

Count IV for lack of good faith and willfully violating the FLSA under 29 U.S.C. § 255(a).

(Doc. 74 at ¶¶ 85–105).  Plaintiffs bring these Counts on behalf of themselves and other similarly situated employees as a collective action under 29 U.S.C. §§ 206 216(b).  (*Id.* at ¶¶ 76–77).

## II.   Discussion

The Court must determine whether Plaintiffs' SAC should be conditionally certified as a collective action under the FLSA notwithstanding Cracker Barrel's Arbitration Agreement.  Because it is dispositive, the Court will first consider Cracker Barrel's Motion to Dismiss and Compel Arbitration.  Cracker Barrel moves to dismiss the SAC for either lack of personal jurisdiction or failure to state a claim for which relief can be granted.  The Court will then turn to Plaintiffs' Second Motion to Certify.

### A.   Cracker Barrel's Motion to Dismiss and Compel Arbitration (Doc. 77)

Cracker Barrel once again moves to dismiss the SAC and seeks to compel the Plaintiffs to arbitrate their claims.  Cracker Barrel argues newly-added plaintiff Basch fails to state a claim for relief because he is subject to the Arbitration Agreement.  (Doc. 77 at

6–10).  Cracker Barrel further reasons that if Basch is subject to the Agreement, then the Court again lacks personal jurisdiction over Harrington, Liammaytry, and Lencerht's claims because they do not arise out of Arizona.  (*Id.* at 5 (citing the Court's 2022 Order (Doc. 73) dismissing the FAC for lack of personal jurisdiction over Harrington, Liammaytry, and Lencerht)).  The Court will consider each of Cracker Barrel's arguments in turn.

### 1.    Whether the Second Amended Complaint Confers Specific Personal Jurisdiction over Cracker Barrel

First, Cracker Barrel argues the Court lacks personal jurisdiction over Harrington, Liammaytry, and Lencerht's claims because they were not employed in Arizona.  (Docs. 77 at 5; 81 at 9–10).  This Court has already settled various issues pertaining to personal jurisdiction in its 2022 Order.  It confirmed it does not have general personal jurisdiction over Cracker Barrel.  (Doc. 73 at 5).  It also explained it has specific personal jurisdiction over claims against Cracker Barrel when there are allegations by a named plaintiff who worked in an Arizona restaurant.  (*Id.* at 3).

For example, the Court explained "the defense of lack of personal jurisdiction was not available to Cracker Barrel when it filed its [F]irst Motion to Dismiss" because "the original complaint included allegations of a Plaintiff who worked in Arizona restaurant" through Gillespie.  (*Id.*)  The Court indeed found, as Cracker Barrel argues, that "there [were] insufficient connections between [Harrington, Liammaytry, Lencerht], Cracker Barrel, and this forum to justify the exercise of specific personal jurisdiction."  (*Id.*)  This is because although "Cracker Barrel purposefully directs some activities to Arizona because it operates restaurants here[,]" the claims set forth by Harrington, Liammaytry, and Lencerht "do not arise out of Cracker Barrel's operation of restaurants in Arizona" to establish specific personal jurisdiction.  (*Id.* at 5).

In light of the 2022 Order, the addition of Basch—a current Arizona Cracker Barrel employee—as a plaintiff cures the personal jurisdiction deficiencies as to Harrington, Liammaytry, and Lencerht.  (*Id.* at 3).  The SAC therefore establishes the Court's personal

jurisdiction over Cracker Barrel by virtue of Cracker Barrel and Basch's contacts with the forum state.

### 2. Whether the Second Amended Complaint States a Claim for Which Relief can be Granted

Second, Cracker Barrel argues that Basch should be dismissed for failure to state a claim for which relief can be granted because his claims are subject to arbitration. The Court will first confirm the validity of Cracker Barrel's Arbitration Agreement before examining Basch's efforts to void the agreement.

### a. 12(b)(6) Standards

Though not explicitly stated, the Court construes Cracker Barrel's Motion to Dismiss and Compel Arbitration as a Federal Rules of Civil Procedure 12(b)(6) motion for failure to state a claim because Basch's claim is barred by the Arbitration Agreement. *See e.g.*, *Leal v. Chapman Chevrolet, L.L.C.*, 2007 WL 1576001, at *1–2 (D. Ariz. May 30, 2007). If Basch's claim is arbitrable, the district court "will never reach the merits of the parties' controversy. Rather, [the district court's] jurisdiction is limited to compelling arbitration, *see* 9 U.S.C. § 4, and reviewing any future arbitration award, *see* 9 U.S.C. §§ 9-12." *Id*. at *2 (citations in original).

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must contain a "short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal of a complaint for failure to state a claim can be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

1031 (9th Cir. 2008).  But courts are not required "to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

                  **b.**    **Cracker Barrel's Arbitration Agreement is Valid and Enforceable**

This Court has already settled three issues pertaining to Cracker Barrel's Arbitration Agreement in its 2021 Order.  First, the Court found that Cracker Barrel's Agreement is valid and enforceable against those employees who are subject to the Agreement. (Doc. 47 at 9).  Cracker Barrel employees routinely sign the Agreement as part of an online employee training program.[4]  (*Id*. at 8).  The Court confirmed that this method of executing the Agreement with employees is procedurally conscionable.  (*Id*.)  Second, a Cracker Barrel employee who signed the Agreement through this online method cannot void the Agreement "by simply saying 'I forgot.'"  (*Id*.)  Last, the Court clarified that the Arbitration Agreements that Cracker Barrel executed "with minors can be voided."  (*Id*. at 3; *see also id*. at 9 ("Plaintiffs [who] alleged to have been minors during their employment with Cracker Barrel [] are not subject to the [Arbitration] Agreement.")).

According to the first two findings in the 2021 Order, Basch entered into a valid and enforceable Arbitration Agreement with Cracker Barrel.  Basch electronically signed the Agreement on October 19, 2019, through the same online method affirmed by the Court as procedurally conscionable.  (*Compare* Docs. 77-1 at ¶¶ 4–10; 77-2 at 2 *with* Doc. 47 at 8–9).  And although Basch states he does "not recall signing an agreement to arbitrate" (Doc. 74-2 at ¶ 3),  this is an insufficient basis to void the Agreement under the 2021 Order. (Doc. 47 at 8).

/ / /

---

[4] "As part of this training, employees log on to an online program using their 'personal email address or individual access number along with their confidential password.' The program guides them through several modules, including one that covers the Agreement. 'Once the employee is presented with the arbitration agreement to read and review, he or she is instructed to 'Please close this document and mark 'complete' to signify that you have read, understood and will comply with the agreement.'" (Doc. 47 at 8) (internal citations omitted).

1

2

       **c.**      **Minor Employees Can Void Cracker Barrel's Arbitration Agreement Within a Reasonable Time After Adulthood**

3        The remaining issue concerns Basch's efforts to void the Agreement after he turned

4  eighteen-years-old. (*Id.* at 3 (finding that "some opt-in plaintiffs were capable of voiding

5  the Agreement due to their status as minors")). It is undisputed that Bash was a sixteen-

6  year-old minor when he signed Cracker Barrel's Arbitration Agreement in 2019. (Docs.

7  74-2 at ¶ 4; 77-2). It is also undisputed that any efforts Basch took to void the Agreement

8  took place in August 2022, which is eighteen months after he turned the majority age. (*See*

9  Doc. 74-2). However, the parties disagree on whether eighteen months is a reasonable time

10  for a minor to effectively disaffirm the Agreement. (Docs. 77 at 10; 80 at 3–5).

11        Arizona state law allows a person to void a contract that they entered into while a

12  minor, provided they do so within a reasonable time of reaching the majority age. *Almada*

13  *v. Ruelas*, 96 Ariz. 155, 158 (1964). However, Arizona courts have not explicitly defined

14  what a "reasonable time" means for a minor to effectively disaffirm a contract. What

15  constitutes a "reasonable time" is "answered in view of the peculiar circumstances of each

16  case." *Sims v. Everhardt*, 102 U.S. 300, 309 (1880); *see Hurley v. Southern Cal. Edison*

17  *Co.*, 183 F.2d 125, 132 (9th Cir. 1950).

18        At the outset, the Court has already identified two opt-in Plaintiffs that were not

19  subject to arbitration because they entered into Cracker Barrel's Arbitration Agreement as

20  minors. (Doc. 47 at 3 (citing 29-2)). Those opt-in Plaintiffs had voided their Agreements

21  2–4 years after turning the majority age, which is well over eighteen months. (*See* Doc.

22  29-2). Accordingly, as a matter of consistency and fairness, the Court finds Basch's

23  eighteen months delay in voiding his Agreement is reasonable. Furthermore, the

24  circumstances particular to Basch do not raise any concerns regarding the length of time

25  that passed before his disaffirmance. In Basch's declaration voiding the Agreement, he

26  states the following:

27

28

      At no time during my employment at Cracker Barrel did any manager or
      [human resources] representative tell me that I was agreeing to arbitrate
      disputes or waiving any rights to pursue claims in court. Nobody has ever

explained to me the terms of any alleged agreement to arbitrate.

(Doc. 74-2).

A minor's lack of understanding as to the significance of a contract was an important factor in *Hurley*, 183 F.2d at 132.  There, the Ninth Circuit considered the general issue of what constitutes a "reasonable time" for a minor to void a contract under state law.[5]  The court held that an individual who disaffirmed a contract fifteen years after reaching the age of majority had done so within a reasonable time because "[he] had no opportunity to exercise any judgment upon the matter until [he] learned he had some interest in [the contract]" *Id*.

Here, considering Basch's averment, eighteen months is a reasonable time for him to disaffirm the Arbitration Agreement.  Basch states that no one explained to him that he was waiving his rights to pursue claims in court by signing the Agreement.  Therefore, he had "no opportunity to exercise any judgment upon the matter" until learning the significance of the Agreement.  *Hurley*, 183 F.2d at 132.  When viewing Basch's statements in light most favorable to Plaintiffs, as the Court must upon a motion to dismiss, the Court finds Basch voided his Agreement within a reasonable time.[6]  (Doc. 80 at 5) (citing *Hurley*, 183 F.2d at 125). Basch is therefore not subject to arbitration.

Last, the Court rejects Cracker Barrel's policy argument that it would be inequitable to allow Basch to void the Agreement on the grounds that he has continued to take the benefits of continued employment with Cracker Barrel after turning the majority age.

---

[5] In *Hurley*, the Ninth Circuit noted that both California and Missouri state law recognized the general principle that contracts "were voidable at the election of the minor manifested within a reasonable time after reaching his majority." 183 F.2d at 131.  Thus, in issuing its ruling, the circuit court found it "unnecessary to determine which law governs, as the rule with respect to disaffirmance of infant's contracts is the same in either state. *Id.* at 132.

[6] The Court finds the out-of-state authorities Cracker Barrel relies on to argue eighteen months is not a reasonable period of time are distinguishable and, in any event, not binding on this issue of Arizona law.  (*See* Doc. 77 at 10 (citing *Norred v. Cotton Patch Cafe, LLC*, 2019 WL 5425479, at *7 (N.D. Tex. Oct. 22, 2019); *Bobby Floars Toyota, Inc. v. Smith*, 269 S.E.2d 320, 323 (N.C. 1980); and *Kelly v. Furlong*, 194 Minn. 465, 467, 261 N.W. 460, 462 (Minn. 1935)).

(Doc. 77 at 8–10).  Although Cracker Barrel cites several out-of-state cases[7] to support this argument, it has not identified any law in Arizona recognizing this exception to the general rule that a minor may void a contract within a reasonable time.  Moreover, the Court is unpersuaded that such an exception would apply in the context of an employment and/or arbitration agreement where the "benefits" differ in kind from those in the agreements at issue in the cases cited by Cracker Barrel—e.g., purchase of a trip, car, and social media account.

In sum, Basch has stated a claim for which relief can be granted and the Court therefore has personal jurisdiction over Cracker Barrel.  The addition of Basch as plaintiff cures the personal jurisdiction deficiencies as to Harrington, Liammaytry, and Lencerht. The Court will accordingly deny Cracker Barrel's Motion to Dismiss and Compel Arbitration.

### B.      Plaintiffs' Second Motion to Certify

The Court will now consider Plaintiffs' Second Amended Motion for Conditional Certification.  Plaintiffs apply the Ninth Circuit's lenient two-step approach for collective action certification.  (Doc. 76 at 10–11).  As mentioned, they seek to bring the following counts against Cracker Barrel as an FLSA collective action:

> Count I for failure to pay tipped-employees minimum wages for work performed on non-tipped duties that exceed 20% of their work time under 29 U.S.C. §§ 203(m), 206;
>
> Count II for failure to timely inform tipped employees of the tip credit requirements under 29 U.S.C. § 203(m);
>
> Count III for failure to pay tipped-employees minimum wages for "off-the-

---

[7] (*See* Doc. 77 at 9 citing *Paster v. Putney Student Travel, Inc.*, 1999 WL 1074120, at *2 (C.D. Cal. June 9, 1999) (rejecting the argument that plaintiff could disaffirm a forum selection clause in a travel contract under California law that she and her mother had signed when she was a minor because she had already gone on the trip and thus experienced the benefits offered); *Bobby Floars Toyota, Inc. v. Smith*, 269 S.E.2d 320, 323 (N.C. 1980) (rejecting disaffirmance where minor plaintiff had continued to use a car he had purchased in a sale of goods contract when he was seventeen after ten months after turning eighteen under North Carolina's state infancy defense); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894 (S.D. Ill. 2012) (rejecting disaffirmance of forum selection clause in a contract for a social media account under California's state infancy defense)).

clock" work under 29 U.S.C. § 206; and

Count IV for lack of good faith and willfully violating the FLSA under 29 U.S.C. § 255(a).

(Doc. 74 at ¶¶ 85–105).  They propose the following putative class should be certified: "all servers who worked for Cracker Barrel in states where it attempts to take a tip credit, under 29 U.S.C. § 203(m), over the last three years, which is the maximum time-period allowed under . . . 29 U.S.C. § 255(a)." (Doc. 76 at 3).[8]  Plaintiffs also request the Court to approve their proposed method of notice to the defined collective. (*Id.* at 12–17).

At the outset, Cracker Barrel urges this Court to follow the Fifth Circuit's more stringent standard for collective action certification.  (Doc. 78 at 3).  It argues Plaintiffs and the defined collective are not similarly situated because Plaintiffs cannot show Cracker Barrel maintains policies that violated the FLSA.  (*Id.* at 4–6).  As to Plaintiffs' proposed notice, Cracker Barrel contests it will be sent to employees who are subject to arbitration and the Court will not have personal jurisdiction over the claims of opt-in plaintiffs outside of Arizona.  (*Id.* at 6–16).  Last, Cracker Barrel asks to submit an additional brief to address Plaintiffs' proposed notice procedures as overbroad.  (*Id.* at 16).

The Court will first set forth the applicable standard for collective certification under the FLSA.  The Court will then determine whether conditional certification of the present matter as a collective action is proper.  Finding that it is, the Court will last consider Plaintiffs' proposed form of notice.

### 1.   Legal Standard for Conditional Certification Under the Fair Labor Standards Act

Plaintiffs filed their SAC "on behalf of themselves and other similarly situated employees as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206 and 216(b)."

---

[8] The Court notes the proposed putative class in Plaintiffs' Motion to Certify varies from the proposed putative class in their Complaint. *Compare* (Doc. 76 at 3) *with* (Doc. 74 at ¶ 11).  For the purpose of this Order, the Court will consider the proposed putative class in Plaintiffs' Motion to Certify as it is most consistent with its Proposed Notice and Consent to Join Forms. *Compare* (Doc. 76 at 3) *with* (Doc. 76-13 at 3).

(Doc. 74 at ¶ 76–77).  Section 216(b)[9] establishes a mechanism for bringing collective actions under the FLSA.  *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108–09 (9th Cir. 2018) (citing 29 U.S.C. § 216(b)). Section 216(b) provides:

> An action to recover the liability prescribed [this subsection] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).  "The FLSA does not define the term 'similarly situated' or describe the process for evaluating the propriety of a collective action." *Sandbergen v. Ace Am. Ins. Co.*, 2019 WL 13203944, at *2 (N.D. Cal. June 17, 2019) (citation omitted).  Thus, the Ninth Circuit employs a two-step approach to collective action certification that addresses "preliminary certification" and "decertification."  *Campbell*, 903 F.3d at 1100 (citing 1 McLaughlin on Class Actions § 2:16 (14th ed. 2017)) (applying the certification process in the context of the FLSA)  These terms have been adopted from Federal Rule of Civil Procedure 23, which governs class actions in federal court.  *Id.*

At the first preliminary certification stage, the main focus is for the Court to determine whether the defined collective is "similarly situated," as required by Section 216(b).  *Id.* at 1109.  The standard is "loosely akin to a plausibility standard, commensurate with the stage of the proceedings."  *Id.*  Courts continuously describe this stage as "lenient." *See Juvera v. Salcido*, 294 F.R.D. 516, 519–20 (D. Ariz. 2013); *Benedict v. Hewlett-Packard Co.*, 2014 WL 587135 at *6 (N.D. Cal. Feb. 13, 2014); *Schiller v. Rite of Passage, Inc.*, 2014 WL 644565, at *3 (D. Ariz. Feb. 19, 2014).  If granted, "preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109.  Then, the second stage occurs after discovery and allows the

---

[9] Except where otherwise noted, all section references are to the Fair Labor Standards Act, Title 29 of the United States Code.

employer to move for "decertification" of the collective action if it can show that the Plaintiffs do not satisfy the "similarly situated" requirement in light of further evidence. *Id.* This prompts the court to "take a more exacting look at the plaintiffs' allegations and the record." *Id.*

Cracker Barrel posits this Court should reject the Ninth Circuit approach and instead employ the Fifth Circuit's more stringent standard set forth in *Swales v. KLLM Transp. Servs. LLC*, 985 F.3d 430 (5th Cir. 2021).  (Doc. 78 at 3).  However, Cracker Barrel provides no argument for this proposition and does not cite to any court within this circuit that has done so.  *Cf. Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 1817058, at *4 (N.D. Cal. May 6, 2021) (rejecting *Swales* and following *Campbell*).  The Court remains unpersuaded and will adhere to the binding Ninth Circuit approach for collective certification under the FLSA as recently clarified in *Campbell*, 903 F.3d at 1108–09.

### 2.     Conditional Certification of the Present Matter

This matter falls within the first step of the Ninth Circuit's approach to collective actions as Plaintiffs request this Court to conditionally certify this action under the FLSA. The preliminary certification stage entails three requirements:  "[i]t is evident from the [FLSA] that workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt into the joint litigation, in writing." *Campbell* 903 F.3d at 1100.

Plaintiffs argue the Court should grant conditional certification because they and the proposed putative class are similarly situated "victims" of Cracker Barrel's nationwide uniform policies and practices that violate the FLSA.  (*See* Doc. 76 at 12).  Plaintiffs also request the Court to approve their method of notice to the defined collective.  (Docs. 76 at 12–17; 76-13 (Proposed Notice Form); 76-14 (Proposed Consent to Join Form)).  The Court will address each of the three conditional certification requirements in turn.

### a.     Plaintiffs' Fair Labor Standard Act Claims

For preliminary certification purposes, Plaintiffs' FLSA allegations neither need to

be strong nor conclusive.  *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010).  A court's determination to "conditionally certify a proposed class for notification purposes only," and "courts do not review the underlying merits of the action."  *Id.*

Plaintiffs are all current or former "tipped employees"[10] for Cracker Barrel who are not subject to Cracker Barrel's Arbitration Agreement.  (Doc. 74 at ¶¶ 6–9).  Plaintiffs represent that Cracker Barrel pays its tipped employees less than minimum wage under the FLSA's tip credit scheme in most of the states in which it operates.  (*Id.* at ¶¶ 22–23).  Within the last three years, they claim: (1) they were paid less than minimum wage while spending more than 20% of their work time on non-tipped duties; (2) they did not receive a timely tip credit notice; and (3) they were not compensated for working off-the-clock.  (Docs. 76 at 4–7; 74 at ¶¶ 85–105).  Thus, Plaintiffs allege (4) Cracker Barrel willfully violated the FLSA under Sections 203(m), 206, 207, and 255(a). (Docs. 76 at 7, 9; 74 at ¶¶ 103–06).

### i.     Minimum Wages for Non-tipped Work

Under Count I, Plaintiffs claim Cracker Barrel violated the FLSA by failing to pay tipped-employees minimum wages for excessive work performed on non-tipped duties. (Doc. 74 at ¶¶ 85–91).  "An employer may fulfill part of its [Section 206] minimum wage obligation to a tipped employee with the employee's tips."  *Or. Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1082 (9th Cir. 2016) (citing 29 U.S.C. § 203(m)).  This practice is known as taking a "tip credit" under Section 203(m).  *Id.*  However, tip credits are subject to the Department of Labor's 80/20 rule[11] for dual jobs.  *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 630 (9th Cir. 2018) (citing FOH § 30d00(f) (2016) with approval) (finding the

---

[10] The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t).

[11] The 80/20 rule provides that "[a]n employee who engages in untipped 'work that is not related to the tipped occupation' or spends more than 20% of her workweek on related duties that are not themselves directed toward producing tips must be treated as working in an untipped occupation and paid the full hourly minimum wage."  *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 630 (9th Cir. 2018) (citing FOH § 30d00(f) (2016) with approval).

Department of Labor's guidance on dual jobs is entitled to *Auer* deference). Therefore, a tipped employee sufficiently states a claim under the FLSA when she alleges her employer failed to pay her the full hourly minimum wage for time spent on non-tipped duties in excess of 20% of the workweek. *Id.* at 615–616, 633.

Plaintiffs state that tipped employees at Cracker Barrel are all assigned various "side-work," none of which are tipped duties or related to the employee's occupation. (Doc. 74 at ¶¶ 28–29). Plaintiffs claim Cracker Barrel has violated the 80/20 rule over the last five years by increasing the amount of non-tipped work that its tipped employees are required to perform. (Doc. 74 at ¶¶ 47–60; *see also* Docs. 76 at 5; 76-6 (copy of Cracker Barrel's policy assigning stocking and cleaning duties to tipped servers)). Plaintiffs have submitted declarations by eight current or former tipped employees stating they have consistently spent more than 20% of their working hours on non-tipped work and have witnessed their coworkers do the same. (*See* Docs. 76-2; 76-3; 76-4; 76-5; 76-9; 76;10; 76-11; 76-12). Plaintiffs argue this excess time should be compensated at minimum wage. (Doc. 76 at 6).

### ii.      Notification of Tip Credit

Under Count II, Plaintiffs claim Cracker Barrel violated the FLSA by failing to inform tipped employees of its use of the tip credit scheme. (Doc. 74 at ¶¶ 92–95). Section 203(m) prohibits an employer from taking a tip credit unless it (1) gives employees prior notice of their intent to use a tip credit and (2) allow its employees to retain all the tips they receive. *Or. Rest. & Lodging Ass'n*, 816 F.3d at 1082, 1084; *see* 29 U.S.C. § 203(m)(2)(a).

Plaintiffs represent that Cracker Barrel does not timely inform its servers of its tip credit requirements. (Doc. 76 at 2; 74 at ¶¶ 61–66). Plaintiffs allege that Cracker Barrel only notifies tipped employees of this information on the employee's first paystub, which is two weeks after Cracker Barrel has already taken tip credits. (Doc. 76 at 6). To support this, Plaintiffs include copies of paystubs and declarations from current and former tipped employees of Cracker Barrel. (*See* Docs. 76-1; 76-7).

/ / /

### iii.    Minimum Wages for Off-the-Clock Work

Under Count III, Plaintiffs claim Cracker Barrel violated the FLSA by failing to pay tipped-employees minimum wages for "off-the-clock" work.  (Doc. 74 at ¶¶ 96–102).  Sections 206 and 207 require an employer to pay its employees for all hours worked and at least one and one-half times their "regular rate" for all hours worked in excess of a forty hour workweek.  29 U.S.C. §§ 206(a)(1), 207(a)(1).

Plaintiffs allege that Cracker Barrel requires or allows employees to work off-the-clock without compensation.  (Docs. 76 at 7;  74 at ¶¶ 96–102).  For example, Plaintiffs state employees are often required to clock-out before they are done performing various non-tipped duties and before they receive their tips.  (Doc. 74 at ¶ 69).  They also allege employees are often required to help with non-tipped duties before clocking-in.  (*Id*.)  Plaintiffs support these allegations with declarations from current and former tipped employees and a former Store Operations Supervisor.  (*See* Docs. 76-1; 76-2; 76-3; 76-4; 76-5).

### iv.    Lack of Good Faith and Willful Violation

Under Count IV, Plaintiffs claim Counts I–III show Cracker Barrel lacked good faith and willfully violated the FLSA.  (Doc. 74 at ¶¶ 103–105).  Section 255(a) allows a plaintiff  to bring an FLSA "cause of action arising out of a willful violation . . . within three years after the cause of action accrued."  29 U.S.C. § 255 (a).

Plaintiffs claim that Cracker Barrel's alleged violations were willful and that Cracker Barrel did not act in good faith when attempting to comply with the FLSA.  (Doc. 74 at ¶¶ 103–105).  It represents Cracker Barrel's corporate management has been aware of these ongoing FLSA violations.  (Doc. 76 at 5).  For example, Plaintiffs include a declaration by a former Store Operations Supervisor from Cracker Barrel's corporate office stating potential pay-related violations were discussed with no remedial efforts. (Docs. 76 at 7–8; 76-1).  Plaintiffs further claim Cracker Barrel "purposely limits the labor budget for each store" and "chooses not to track the amount of time servers spend on tipped

1    duties versus non-tipped duties."  (Doc. 74 at ¶ 105).

2        To summarize, Plaintiffs' allegations are sufficient to sustain a collective action

3    under the FLSA.

### b.  Whether Plaintiffs and the Proposed Putative Class are Similarly Situated

6        The second FLSA certification requirement requires Plaintiffs to show they are

7    "similarly situated" with the defined collective under Section 216(b).  *See Campbell*, 903

8    F.3d at 1109.  According to the Ninth Circuit, plaintiffs are similarly situated "to the extent

9    they share a similar issue of law or fact material to the disposition of their FLSA claims."

10   *Id*. at 1117.  A plaintiff "need . . . only show that there is some 'factual nexus which binds

11   the named plaintiffs and the potential class members together[.]'"  *Shoults*, 2020 WL

12   8674000, at *2 (quoting *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, 2009 WL 3241790, at

13   *3 (D. Ariz. Sept. 30, 2009)).  The standard is "lenient" and can be satisfied by "substantial

14   allegations that the putative class members were together the victims of a single decision,

15   policy, or plan."  *Id.* at *1 (citations omitted).  This can be achieved through similarities

16   "with respect to their job requirements and with regard to their pay provisions."  *Wood v.*

17   *TriVita, Inc.*, 2009 WL 2046048, at *4 (D. Ariz. Jan. 22, 2009).

18       The burden rests on the plaintiff to establish they are similarly situated to the rest of

19   the proposed class.  *Shoults*, 2020 WL 8674000, at *1.  The court's determination is "based

20   primarily on the pleadings and any affidavits submitted by the parties."  *Kesley v. Ent.*

21   *U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014) (internal citation omitted); *see also*

22   *Campbell*, 903 F.3d at 1109.  It is not the court's role to resolve factual disputes, decide

23   substantive issues relating the merits of the claims, or make credibility determinations at

24   this first stage of certification.  *See Lee v. Asurion Ins. Servs. Inc.*, 2016 WL 9525665, at

25   *2 (D. Ariz. Dec. 2, 2016) (citing *Colson*, 687 F. Supp. 2d at 926)); *see also Thornsbury*

26   *v. Pet Club LLC*, 2016 WL 11602764, at *2 (D. Ariz. Nov. 22, 2016).  Any "disparities in

27   the factual employment situations of any plaintiffs who choose to opt in should be

28   considered during the court's second tier analysis[.]"  *Davis v. Westgate Planet Hollywood*

*Las Vegas, LLC*, 2009 WL 102735, at *10 (D. Nev. Jan. 12, 2009).  Thus, the plaintiff's burden is low and "the initial determination to certify . . . typically results in conditional certification of a representative class."  *Curphey v. F&S Mgmt. I LLC*, 2021 WL 487882, at *2 (D. Ariz. Feb. 10, 2021) (internal quotation and citation omitted).

Here, Plaintiffs propose certification of the following putative class: "all servers who worked for Cracker Barrel in states where it attempts to take a tip credit, under 29 U.S.C. § 203(m), over the last three years, which is the maximum time-period allowed under . . . 29 U.S.C. § 255(a)."  (Doc. 76 at 3).  Plaintiffs argue they are similarly situated with the proposed class because they are all "victims" of Cracker Barrel's uniform policies and practices that violate the FLSA.  (*Id*. at 12).  For support, they provide declarations of other potential class members "confirming Cracker Barrel's nationwide FLSA violations" and "witness[ing] other servers at their locations being treated the same."  (*Id*. at 12).

The Court finds Plaintiffs have met their burden.  First, all party plaintiffs are current or former tipped employees for Cracker Barrel that are paid under the tip credit scheme.  Thus, they are similarly situated with regard to their pay provisions.  *Wood*, 2009 WL 2046048, at *4.  Second, all party plaintiffs are "servers" and have the same job duties.  Plaintiffs have submitted a declaration by a former Store Operations Supervisor stating Cracker Barrel stores use a "side-work chart created by corporate" that assigns non-tipped duties to all servers.  (Doc. 76-1 at ¶ 5).  Plaintiffs have also provided a copy of the purported "side-work chart."  (*see also* Doc. 76-6).  Thus, all party plaintiffs are similarly situated with regard to their job requirements.  *Wood*, 2009 WL 2046048, at *4.

Cracker Barrel contends Plaintiffs have not met their burden for preliminary certification because they failed to show Cracker Barrel maintains any unlawful common policy or plan.  (Doc. 78 at 3–6).  It submits its own affidavits and declarations to justify its current policies as compliant under the FLSA.  (*Id.*)  But, as explained, it is not the court's role to resolve factual disputes, decide substantive issues relating the merits of the claims, or make credibility determinations at this first stage of certification.  *See Lee*, 2016 WL 9525665, at *2.  The declarations and affidavits provided by Plaintiffs and potential

class members contain substantial allegations that they were "victims" of Cracker Barrel's uniform, nationwide policies. *Shoults*, 2020 WL 8674000, at *2; (*see* Doc. 79 at 4). Plaintiffs have therefore shown sufficient factual nexuses that bind them with the proposed putative class. *Shoults*, 2020 WL 8674000, at *2; *see e.g., Campbell*, 903 F.3d at 1102 ("[A]llegations of a Department-wide policy should suffice to make the [employees] similarly situated[.]").

In sum, Plaintiffs have met their burden in showing they and the defined collective are similarly situated under the lenient standard applicable at the first step of the certification process. All party plaintiffs are current or former tipped serves at Cracker Barrel who are paid under the tip credit scheme and allege the same FLSA violations. Therefore, the Court will conditionally certify the present matter as a collective action under the FLSA for notice purposes.

### 3.   Approval of Notice

The third FLSA certification requirement is "the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109. To effectuate notice to the defined collective, Plaintiffs ask this Court to approve their Proposed Notice and Consent to Join forms (Docs. 76-13; 76-14); authorize Plaintiffs to mail, email, text, and post notices to potential collective members; and require Cracker Barrel to produce information of all current and former servers who worked at the company within the relevant opt-in period. (Doc. 76 at 1–2, 10–11).

Cracker Barrel argues that Plaintiffs' proposed notice is improper because: (1) notice will be sent to employees who are subject to Cracker Barrel's Arbitration Agreement; and (2) the Court does not have personal jurisdiction over Cracker Barrel for collective action members outside of Arizona. (Doc. 78 at 6–16). Cracker Barrel also asks to submit an additional brief to address Plaintiffs' proposed notice method and procedures as overbroad. (*Id*. at 16). The Court will first address Cracker Barrel's jurisdictional arguments before turning to Plaintiffs' proposed notice procedures.

1
2

               **a.**      **Cracker Barrel's Jurisdictional Arguments**

               **i.**      **Employees Subject to Arbitration**

3
4
5
6
7
8
9

First, Cracker Barrel argues that Plaintiffs cannot send notice to servers who are bound by its Arbitration Agreement and Plaintiffs have otherwise failed to identify any servers who are not subject to the Agreement.  (Doc. 78 at 6–7).  Plaintiffs represent its Proposed Notice and Consent to Join Forms comply with the Court's Prior Orders regarding the enforceability of the Agreement because it "inform[s] potential opt-in plaintiffs that they can only join if they are not subject to arbitration." (Doc. 76 at 2 n.1; *see also* Doc. 76-13 at 1, 2).

10
11
12
13
14
15
16
17

At the outset, the Court has clarified which of Cracker Barrel's employees are subject to the Agreement versus those employees who are not.  Employees who have signed the Agreement, including through Cracker Barrel's online training program, while the majority age are subject to the Agreement.  (Doc. 47 at 8–9).  By contrast, employees are not subject to the Agreement if they: (1) did not sign the Agreement; (2) signed the Agreement when they were a minor and are still a minor; or (3) signed the Agreement when they were a minor and voided the Agreement after turning the majority age.[12]  *Id.*;  *see supra* Section II.A(2)(b)–(c).

18
19
20
21
22
23
24

Cracker Barrel cites to *Sandbergend v. Ace American Ins.* for the proposition that notice cannot be sent to servers who are bound by the Agreement.  (Doc. 78 at 6–7 citing 2019 WL 13203944)).  In that case, the California district court held that plaintiffs could not send notice to any potential class members who had signed an arbitration agreement. *Id.* at *4.  The plaintiffs had stipulated that any class member who signed the arbitration agreement would proceed with arbitration as the agreement's enforceability was not at issue. *Id.* at *2.

25
26

This matter is distinct from *Sandbergend* because the enforceability of Cracker Barrel's Arbitration Agreement *is* at issue.  As stated, some Cracker Barrel employees are

27
28

---

[12] For example, "at least two of the opt-in Plaintiffs are not subject to arbitration" having disaffirmed their Agreements 2–4 years after turning the majority age (Doc. 47 at 3 (citing 29-2)).  Additionally, Basch is not subject to arbitration having disaffirmed his Agreement eighteen months after turning the majority age.  *See supra* Section II.A(2).

not bound by the Arbitration Agreement despite having signed it.  Thus, "[a]t this stage, all putative collective members remain *potential* plaintiffs."  *Monplaisir v. Integrated Tech Grp., LLC*, 2019 WL 3577162, at *3 (N.D. Cal. Aug. 6, 2019) (emphasis added).  Courts in this circuit have continuously held that disputes over which putative class members are subject to arbitration are better addressed at the second stage of the certification process. *See e.g., id*. ("[T]o avoid putting the cart before the horse, this inquiry [of arbitration] is best left for step two");  *Mejia v. Bimbo Bakeries USA Inc.*, 2018 WL 11352489, at *4 n.7 (D. Ariz. May 7, 2018); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825, at *8–9 (N.D. Cal. Dec. 21, 2018); *Delara v. Diamond Resorts Int'l Mktg., Inc.*, 2020 WL 2085957, at *5–6 (D. Nev. Apr. 30, 2020).

In sum, Plaintiffs have met their burden for conditional certification under the similarly situated standard.  Even though some notified members of the putative class may be "subject to an enforceable arbitration agreement, [the] court may not preemptively deny FLSA certification or narrow the scope of the proposed collective. . . . Only after the FLSA plaintiffs join this action, may the court entertain [a] defendants' arbitration-related motions seeking to compel opt-in plaintiffs to arbitrate or to prohibit plaintiffs from proceeding collectively."  *Campanelli*, 2018 WL 6727825, at *9.  Therefore, conditional certification and notice to the collective are appropriate here despite some notified servers being subject to arbitration.

           **ii.**       **Personal Jurisdiction in Federal Collective Actions**

Second, Cracker Barrel argues that Plaintiffs cannot send notice to non-Arizona servers because "the Court does not have jurisdiction over opt-in and putative collective members whose claims stem from non-Arizona activities, i.e., servers who did not work for Cracker Barrel in Arizona."  (Doc. 78 at 8).  Cracker Barrel cites to *Bristol-Myers Squibb Co. v. Superior Court of California* for support, which involved a mass tort action under California state law.  582 U.S. 256 (2017).  There, the Supreme Court required every class member to establish personal jurisdiction over the nonresident defendant by showing a sufficient connection between their individual claims and the forum state.  *Id.* at 1781–

1783.  It held that, absent general personal jurisdiction over the defendant, a court does not have personal jurisdiction over state claims by nonresident plaintiffs that do not arise out of the forum.  *Id.*

However, the Supreme Court declined to rule on whether this rule applies to a federal court's ability to exercise personal jurisdiction in cases arising out of federal law. *Id.* at 1783–1784.  Thus far, four circuits have resolved whether *Bristol-Myers* applies to FLSA collective actions.  The Third, Sixth, and Eighth Circuits hold it does.  *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370–71 (3d Cir. 2022); *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 397 (6th Cir. 2021); *Vallone v. CJS Sols. Grp.*, LLC, 9 F.4th 861 (8th Cir. 2021).  The First Circuit holds it does not. *See Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022).

The Ninth Circuit has yet to address this issue, and district courts within this circuit have "come to varying conclusions." *Wilkerson v. Walgreens Specialty Pharmacy LLC*, 2022 WL 15520004, at *4 (D. Ariz. Oct. 27, 2022).[13]  Majority of the Ninth Circuit district courts have rejected applying *Bristol-Myers* to collection actions arising under the FLSA. *Id.*  These cases reason that nothing in the FLSA limits remedies to in-state plaintiffs and so applying *Bristol-Myers* to FLSA claims would be contrary to congressional intent.  *See e.g., Swamy*, 2017 WL 51967 at *2.  The Court agrees as Section 216(b) allows collective actions to proceed under the FLSA so long as employees are "similarly situated." 29 U.S.C. § 216(b).

Moreover, it is well-settled that the Court has specific personal jurisdiction in this

---

[13] Including *Wilkerson*, four Ninth Circuit district courts have applied *Bristol-Meyers* to FLSA collective actions while "at least seven have held the opposite." 2022 WL 15520004, at *4.  *Compare Kurtz v. RegionalCare Hospital Partners, Inc*, 2021 WL 6246619, at *5–6 (E.D. Wash. Sept. 9, 2021); *Carlson v. United Nat. Foods, Inc.*, 2021 WL 3616786, at *4 (W.D. Wash. Aug. 14, 2021); *McNutt v. Swift Transp. Co. of Ariz.*, 2020 WL 3819239, at *7–9 (W.D. Wash. July 7, 2020) *with Arends v. Select Med. Corp.*, 2021 WL 4452275, at *1 (C.D. Cal. July 7, 2021); *Pavloff v. Cardinal Logistics Mgmt. Corp.*, 2020 WL 6828902, at *4 n.2 (C.D. Cal. Oct. 2, 2020); *Cooley v. Air Methods Corp.*, 2020 WL 9311858, at *3 (D. Ariz. Sept. 25, 2020); *Chavez v. Stellar Mgmt. Grp.*, 2020 WL 4505482, at *5–7 (N.D. Cal. Aug. 5, 2020); *Seiffert v. Qwest Corp.*, 2018 WL 6590836, at *1–4 (D. Mont. Dec. 14, 2018); *Swamy v. Title Source, Inc.*, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017); *Thomas v. Kellogg Co.*, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017).

matter over claims against Cracker Barrel because there are allegations by a named plaintiff who worked in an Arizona restaurant. *See supra* Section II.A(1) (citing Doc. 73 at 3) ("The addition of Basch as plaintiff cures the personal jurisdiction deficiencies as to Harrington, Liammaytry, and Lencerht."). Therefore, following the majority of district courts within this circuit, the Court declines to apply *Bristol-Myers* to the present FLSA action and will allow Plaintiffs to notify opt-in plaintiffs from outside Arizona. To hold otherwise would be inconsistent with the Court's previous findings.

### b. Plaintiffs' Method of Notice

Last, the Court will review Plaintiffs proposed notice method and procedures. Cracker Barrel seeks to submit an additional brief to address Plaintiffs' procedures as overbroad. (Doc. 78 at 16). The Court construes this as a request to file a surresponse. But neither the Federal Rules of Civil Procedure nor the District's Local Rules entitle a party to a surresponse as a matter of right as they are "highly disfavored and permitted only in extraordinary circumstances." *Finley v. Maricopa Cty. Sherriff's Office*, 2016 WL 777700 at *1 n. 1 (D. Ariz. Feb. 29, 2016); *see also See* LRCiv 7.2. Here, there are no extraordinary circumstances that would give rise to allowing Cracker Barrel a surresponse. *Cf. Fitzhugh v. Miller*, 2020 WL 1640495 at *9 (D. Ariz. Apr. 2, 2020) (explaining valid reasons are where the movant raises new arguments in its reply brief). The Court accordingly rejects Cracker Barrel's request and will consider Plaintiffs' proposed method of notice.

Unlike a class action under Rule 23, to participate in a collective action, an employee is required to give her consent in writing to become a party. 29 U.S.C. § 216(b); *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA are dependent on the employee receiving accurate and timely notice about the pendency of the collective action, so that the employee can make informed decisions about whether to participate). "If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action." *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006). In an FLSA action, "the court must provide potential plaintiffs 'accurate and timely notice concerning the pendency of the

collective action, so that they can make informed decisions about whether or not to participate.'" *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann-La Roche,* 493 U.S. at 170).  Thus, "[t]he court may authorize the named FLSA plaintiffs to send notice to all potential plaintiffs and may set a deadline for those potential plaintiffs to join the suit."  *Id.* at 535 (citing *Hoffmann–La Roche Inc.*, 493 U.S. at 169).  It is within the district court's discretion to "approve the broadest notice possible on conditional certification."  *Vega v. All My Sons Bus. Dev. LLC*, 2022 WL 684380, at \*3 (D. Ariz. Mar. 8, 2022).

Here, Plaintiffs have submitted their Proposed Notice and Consent to Join forms for approval.  (Docs. 76-13; 76-14).  They intend to mail, email, and text notices to potential class members as well as have Cracker Barrel post the notice on its employee bulletins.  (Doc. 76 at 14–15).  Plaintiffs also seeks information from Cracker Barrel regarding the potential class members.  (*Id.* at 18).

### i. Plaintiffs' Proposed Notice and Consent to Join forms

First, the Court approves Plaintiffs' Notice and Consent to Joint forms with limited modifications.  Plaintiffs' notice allows for an opt-in period of ninety days, which the Court finds appropriate.  (Doc. 76 at 16).  Plaintiffs say this period is necessary given the high number[14] of potential class members.  (Doc. 76 at 16) (citing *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1036–37 (N.D. Cal. 2017); *Delara*, 2020 WL 2085957, \*12; *Ziglar V. Express Messenger Systems Inc.*, 2017 WL 6539020, at \*6 (D. Ariz. Aug. 31, 2017)).  Moreover, the Notice form properly contains an explicit judicial disclaimer stating, "[t]he Court has not ruled which party will prevail in this lawsuit, but has ordered that this notice be sent to you to inform you of your legal rights and ability to make a claim for unpaid wages."  (Doc. 76-13 at 2).  *See Stanfield v. Lasalle Corr. W. LLC*, 2022 WL 2967711, at \*5 (D. Ariz. July 26, 2022) (finding the notice form contained an adequate judicial

---

[14] Plaintiffs estimate the potential class,  covering a three year time period, is comprised of 100,000–200,000 current and former Cracker Barrel servers among 650 stores nationwide.  (Doc. 76 at 14).

disclaimer).

Plaintiffs seek to use the three year statutory time period for Cracker Barrel allegedly willful violations of the FLSA.  29 U.S.C. § 225(a).  Thus, the class period is three years before the filing of the complaint.  *See Delara*, 2020 WL 2085957, at *4 (allowing references to the three-year limitation on willful violations because whether the defendant acted willfully "is a merits question not suitable to resolution at this stage").  The Original Complaint was filed on May 28, 2021.  (*See* Doc. 1).  Thus, Plaintiffs shall include language in their notice stating the class period starts on May 28, 2018.  (*See* Doc. 76-13 at 2).

Last, the Court directs Plaintiffs to delete sections of the notice form, email, and text that advise potential plaintiffs they may contact Plaintiffs' counsel regarding questions about the collective action or their legal rights.  (Doc. 76-13 at 4, 5).  This is because potential plaintiffs could construe those sections as suggestions to call Plaintiffs' counsel. *See Stanfield*, 2022 WL 2967711, at *5 (citing *Barrera v. US Airways Grp., Inc.*, 2013 WL 4654567, at *9 (D. Ariz. Aug. 30, 2013) (directing plaintiff to omit the "further information" section because it could be construed as encouragement for potential plaintiffs to call plaintiff's counsel); *see also Wertheim v. State of AZ*, 1993 WL 603552, at *6 (D. Ariz. Sept. 30, 1993).

### ii.      Plaintiffs' Proposed Method of Notice

Second, the Court finds Plaintiffs' proposed methods of mailing, emailing, and texting the notices to potential class members are reasonable.  *See Phelps v. MC Commc'ns, Inc.*, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) (finding notice by mail is sufficient, especially when email notice is also provided); *see e.g.*, *Anthony v. Rise Servs. Inc.*, 2022 WL 3042854, at *3 (D. Ariz. Aug. 2, 2022) (allowing notice by mail, email, and text). However, the Court declines to require Cracker Barrel to post the notice on its employee bulletins.  *See Delara*, 2020 WL 2085957, at *7 (finding there is no basis for requiring the defendant to post the notice in the workplace).  Apart from citing cases from out of circuit (Doc. 76 at 15–16), Plaintiffs have not identified "a need for a third-party administrator"

to effectuate notice and "there is no reason to suspect [Plaintiffs] counsel is incapable of properly handling notice" themselves. *Delara*, 2020 WL 2085957, at *7.

Plaintiffs also propose notice be sent twice during the opt-in period: once on day one of the notice period and another on day forty five. (Doc. 76 at 16). The Court finds a reminder notice halfway through the opt-in period is reasonable. *See Curphey v. F&S Mgmt. I LLC*, 2021 WL 487882, at *5 (D. Ariz. Feb. 10, 2021) (ordering a sixty day opt-in period and a reminder notice halfway through the opt-in period); *see e.g.*, *Delara*, 2020 WL 2085957, at *6 (ordering a ninety day opt-in period and a reminder notice halfway through the opt-in period).

### iii.    Plaintiffs' Request for Information

Last, Plaintiffs requests Cracker Barrel to, within twenty-one days of the Court's Order, produce the names, mailing addresses, email addresses, cell phone numbers, last four digits of social security numbers, and dates of employment of all current and former servers who have worked for Cracker Barrel during the class period. (Doc. 76 at 17). They explain this information is necessary to locate those current or former servers who may have moved. (*Id.*)

Discovery of the contact information for current and former Cracker Barrel servers is necessary for Plaintiffs to provide those potential class members with notice of the collective action. *See Hoffmann-La Roche*, 493 U.S. at 170 (names and addresses of discharged employees were "relevant to the subject matter of the action and that there were no grounds to limit the discovery under the facts and circumstances of this case."). However, Plaintiffs do not explain why a social security number is necessary to communicate with clients. *Delara*, 2020 WL 2085957, at *4 ("If counsel later needs that information, it can request it of the opt-in plaintiffs and justify the request to them."). Cracker Barrel shall not provide Plaintiffs with servers' social security numbers. Moreover, the Courts finds twenty-one days is a reasonable time for Cracker Barrel to provide this discovery as courts in this district have allowed as little as fourteen days for production. *See Barrera*, 2013 WL 4654567, at *10 (finding a five day request to produce

an electronic list of potential opt-ins burdensome and permitting fourteen days instead).

In sum, the Court approves Plaintiffs' proposed Notice and Consent to Join forms with the following modifications:

(1)   Plaintiffs shall include language stating the class period starts on May 28, 2018.

(2)   Plaintiffs shall  delete sections of the notice form, email, and text that advise potential plaintiffs they may contact Plaintiffs' counsel regarding questions about the collective action or their legal rights.

The Court also approves Plaintiffs' proposed methods of mailing, emailing, and texting the notices to potential class members, and Plaintiffs are permitted to send one reminder halfway through the opt-in period.  Cracker Barrel shall, within twenty-one days of this Order, provide Plaintiffs the names, mailing addresses, email addresses, cell phone numbers, and dates of employment of all current and former servers who have worked for Cracker Barrel from May 28, 2018, to the present.  Although Defendant raises issues regarding collective members who are subject to arbitration, such issues may be addressed at the second decertification stage.

## IV.   Conclusion

It is proper to conditionally certify this collective action under the FLSA for notice purposes.  The Court denies Cracker Barrel's Motion to Dismiss and Compel Arbitration because Basch effectively voided Cracker Barrel's Arbitration Agreement and has thus stated a claim for which relief can be granted.  Furthermore, the addition of Basch—a current Arizona Cracker Barrel employee—as a plaintiff establishes the Court's personal jurisdiction over Cracker Barrel and cures the personal jurisdiction deficiencies as to Harrington, Liammaytry, and Lencerht.

The Court also grants Plaintiffs' Second Motion to Certify.  Plaintiffs have met their low burden for preliminary certification of this matter as a collective action because they allege violations under the FLSA and have sufficiently shown they are similarly situated with the defined collective.  Last, Plaintiffs' Proposed Notice and Consent to Join forms,

with limited modifications, are a proper means of providing notice to the defined collective.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Second Amended Motion for Conditional Certification (Doc. 76) is **GRANTED in part**.

**IT IS FURTHER ORDERED** that Cracker Barrel's Motion to Compel Individual Arbitration and Dismiss Second Amended Complaint with Prejudice (Doc. 77) is **DENIED**.

**IT IS FURTHER ORDERED** the collective class of potential plaintiffs is conditionally certified under 29 U.S.C. § 216(b) and shall consist of all current and former Cracker Barrel servers who worked for Cracker Barrel from May 28, 2018, to the present in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme.

**IT IS FURTHER ORDERED** that Plaintiffs' Notice and Consent to Join forms (Docs. 76-13; 76-14) shall be written and sent in compliance with the directives in this Order.

**IT IS FINALLY ORDERED** that within **twenty-one (21)** days of this Order, Cracker Barrel shall provide Plaintiffs the names, mailing addresses, email addresses, cell phone numbers, and dates of employment of all current and former servers who have worked for Cracker Barrel from May 28, 2018, to the present.  Cracker Barrel shall provide this discovery in electronic and importable format.

Dated this 31st day of March, 2023.

Honorable Diane J. Humetewa
United States District Judge