**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Harrington, et al., | No. CV-21-00940-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Cracker Barrel Old Country Store Incorporated, | |
| Defendant. | |

On March 31, 2023, the Court conditionally certified this matter as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (the "Collective Certification Order") (Doc. 82). Pending before the Court are five motions filed by Defendant Cracker Barrel Old Country Store Incorporated ("Cracker Barrel"), each of which concern rulings that stem from the Collective Certification Order:

(1)  Cracker Barrel's "Motion for Clarification, or, in the Alternative, Reconsideration" (Doc. 83)[1] ("Motion for Reconsideration") regarding the putative collective definition that was established in the Collective Certification Order;

(2)  Cracker Barrel's "Motion to Certify Interlocutory Appeal" (Doc. 84)[2] of four questions arising out of the Collective Certification Order;

(3)  Cracker Barrel's "Motion to Strike Plaintiffs' Request for Equitable

---

[1] The matter is fully briefed. Plaintiffs filed a Response (Doc. 90) in accordance with the Court's April 17, 2023, Order (Doc. 88).

[2] The matter is fully briefed. Plaintiffs did not file a Response, and the time to do so has passed. *See* LRCiv 7.2(c) (opposing party has 14 days after service within which to serve and file a responsive memorandum).

Tolling" (Doc. 93)[3], where the contended request appeared in Plaintiffs' Response to Cracker Barrel's Motion for Reconsideration (Doc. 90);

(4)     Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96)[4] of the Collective Certification Order to the Ninth Circuit (Doc. 91);

(5)     Cracker Barrel's Motion to Strike Plaintiffs' Notice of Supplemental Authority (Doc. 101)[5] regarding *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).

For the following reasons, the Court will modify the putative collective definition, certify for interlocutory appeal questions regarding arbitration and personal jurisdiction in FLSA collective actions, and stay the matter pending the Ninth Circuit's review.

## I.     Procedural History[6]

Cracker Barrel filed most of the pending motions within the span of twenty-one days, creating a complex procedural history.  Below is a brief overview of the relevant rulings, motions, and arguments:

In August 2022, Cracker Barrel filed its "Motion to Compel Arbitration and Dismiss Second Amended Complaint with Prejudice" (Doc. 77).  Plaintiffs Andrew Harrington, Katie Liammaytry, Jason Lenchert, and Dylan Basch (collectively "Plaintiffs'") also filed their "Second Amended Motion For Conditional Certification" (Doc. 76).  In March 2023, the Court issued its Collective Certification Order, which denied Cracker Barrel's Motion but granted Plaintiffs' Motion.  (*See generally* Doc. 82).  In so doing, the Court

---

[3] The matter is fully briefed.  Plaintiffs filed a Response (Doc. 94).  Cracker Barrel did not file a reply brief and the time to do so has passed.  *See* LRCiv. 7.2(c).

[4] The matter is fully briefed.  Plaintiffs filed a Response (Doc. 97) and Cracker Barrel filed a Reply (Doc. 98).

[5] The matter is fully briefed.  Plaintiffs filed a Response (Doc. 102).  Cracker Barrel did not file a reply brief and the time to do so has passed.  *See* LRCiv. 7.2(c).

[6] The Court incorporates by reference the Background Section of its Collective Certification Order (Doc. 82 at 2–4), which contains a comprehensive history of Plaintiffs' prior amended complaints (Docs. 1; 57; 74) and prior motions for certification (Docs. 8; 58; 76).

conditionally certified the present action as a collective under Section 216(b) of the FLSA. (*Id.*)  The Court defined the following putative collective for notice purposes: "all current and former Cracker Barrel servers who worked for Cracker Barrel from May 28, 2018, to the present in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme."  (*Id.* at 28).[7]  The Court also authorized Plaintiffs' Notice and Consent to Join forms (Docs. 76-13; 76-14) (the "Notice Forms") to be disseminated in compliance with the Court's directives.  (Doc. 82 at 19–28).

On April 14, 2023, Cracker Barrel filed its Motion for Reconsideration on the bounds of the putative collective for notice purposes.  (Doc. 83).  Cracker Barrel concurrently filed a Motion to Certify Interlocutory Appeal (Doc. 84) and a "Motion to Stay Deadlines for Answer and Production of Employee Data" (Doc. 85).

In its April 17, 2023, Order, the Court noted some merit in Cracker Barrel's position on the defined putative collective, and thus ordered the parties to meet and confer on possible stipulated language for the terms of notice.  (Doc. 88 at 1).  If no agreement could be reached, the Court ordered Plaintiffs to respond to Cracker Barrel's Motion for Reconsideration.  (*Id.*)  Consequently, the Court stayed the notice deadlines established in the Collective Certification Order pending a ruling on Cracker Barrel's Motion for Reconsideration.  (*Id.* at 2).

On April 28, 2203, Plaintiffs filed their Response to Cracker Barrel's Motion for Reconsideration (Doc. 90) agreeing to a "slight modification" of the Collective Certification Order.  (*Id.* at 1).

On April 30, 2023, instead of waiting for the Court to review the parties' arguments on the Collective Certification Order and rule on the related Motion for Reconsideration, Cracker Barrel appealed the Collective Certification Order to the Ninth Circuit.  (Doc. 91). Thereafter, Cracker Barrel moved to strike Plaintiffs' request for equitable tolling as set forth in Plaintiffs' Response to Cracker Barrel's Motion for Reconsideration.  (Doc. 93). Cracker Barrel also moved to stay the case pending the appeal of the Collective

---

[7] The Court used the proposed putative collective definition as stated in Plaintiffs' Motion to Certify Class (*see* Doc. 76 at 2).  (Doc. 82 at 11 n.8).

Certification Order.  (Doc. 96).

On June 25, 2023, Plaintiffs file a notice of new United States Supreme Court authority that relates to issues in the present matter.  (Doc. 99).  Cracker Barrel moved to strike Plaintiffs' notice.  (Doc. 99).

On October 4, 2023, Cracker Barrel's then-counsel moved to withdraw as counsel of record.  (Doc. 103).  Cracker Barrel has since retained new counsel.  (Doc. 105).

## II.     Discussion

The Court will address together Cracker Barrel's Motion for Reconsideration and Motion to Strike Plaintiffs' Request for Equitable Tolling because both relate to the bounds of the putative collective.  The Court will then turn to Cracker Barrel's Motion to Certify Interlocutory Appeal.  The Court will conclude with Cracker Barrel's Motion to Stay Proceedings Pending Appeal and Motion to Strike Plaintiffs' Notice of Supplemental Authority because both relate to whether a stay in this case is proper.

### A.     Cracker Barrel's Motion for Reconsideration (Doc. 83) and Motion to Strike Plaintiffs' Request for Equitable Tolling (Doc. 93)

Cracker Barrel seeks reconsideration of the putative collective definition due to concerns regarding the scope of data it must produce on the individuals who will be sent notice.  Cracker Barrel represents the putative collective currently encompasses 159,934 individuals.  (Doc. 83 at 3).  Cracker Barrel seeks clarification of the definition "to make sure FLSA conditional certification notice is not sent to individuals whose FLSA claims are already time-barred or who this Court has previously determined cannot join this court action." (*Id*. at 2).  First, Cracker Barrel argues the Court should reconsider the time frame of the putative collective in light of the opt-in standard for FLSA collective actions. (*Id*. at 4–6).  Cracker Barrel seeks to strike Plaintiffs' request that the statute of limitations be equitably tolled.  (*See generally* Doc. 93).  Second, Cracker Barrel argues the Court should reconsider the scope of the putative collective so that it expressly excludes servers who signed Cracker Barrel's Arbitration Agreement after turning 18 years old. (Doc. 83 at 10, 6–9).

The Court will set forth the applicable legal standard for motions for reconsideration before turning to Cracker Barrel's arguments.

### 1.      Legal Standards

Motions for reconsideration should be granted only in rare circumstances. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Similarly, Arizona Local Rule of Civil Procedure 7.2 provides "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). The movant must specify "[a]ny new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier." *Id.* Whether to grant a motion for reconsideration is left to the "sound discretion" of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003). Such motions should not be used for the purpose of asking a court "to rethink what the court had already thought through—rightly or wrongly." *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

### 2.      The Time Frame of the Putative Collective

Cracker Barrel first argues the Court should reconsider the time frame of the putative collective because it does not accurately reflect the opt-in standard for FLSA collective actions. The Collective Certification Order defined the putative collective for notice purposes as follows: "all current and former Cracker Barrel servers who worked for Cracker Barrel *from May 28, 2018, to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme." (Doc. 82 at 28) (emphasis

added).  In so defining, the Court settled that Plaintiffs may use the three-year statutory time period for Cracker Barrel's allegedly willful violations of the FLSA.  (*Id*. at 25 (citing 29 U.S.C. § 225(a)).  Cracker Barrel does not take issue with the Court's decision to do so.  The Court further explained that because the original complaint in this matter was filed on May 28, 2021, the putative collective time frame is three years before the filing of the complaint on May 18, 2018.  (*Id*.)  Cracker Barrel argues this decision was error.

Cracker Barrel posits the time frame should start on March 31, 2020—or, three years before the Court certified this matter as a collective action.  (Doc. 83 at 6).  Cracker Barrel maintains that collective actions under the FLSA differ from other class actions under Federal Rule of Civil Procedure 23 in that an FLSA opt-in plaintiff's action is considered commenced from the date their opt-in form is filed with the district court.  (*Id*. at 4).  Cracker Barrel asserts the Court's error resulted in a defined collective that includes an extra 64,216 individuals whose claims would otherwise be time-barred.  (*Id*. at 5).  In response, Plaintiffs admit that "a three-year statute of limitations from the date a plaintiff opts-in is generally the rule" in FLSA cases.  (Doc. 90 at 2).  However, Plaintiffs argue the statute of limitations should be equitably tolled due to Cracker Barrel's efforts to prolong case proceedings.  (*Id*. at 5–8).  Cracker Barrel moves to strike Plaintiffs' request on the basis that it is improper to raise new claims or grounds for relief in a response brief.  (Doc. 93 at 2).

The Courts agrees with Cracker Barrel that the Collective Certification Order erred when setting the time frame of the putative collective as three years prior to the filing of the complaint.  The Court also finds that Plaintiffs' request for equitable tolling—although procedurally improper—is meritorious.  The time frame of the putative collective will be modified accordingly.

### a. The Putative Collective Should Reflect the FLSA's Opt-in Standard

Section 255(a) of the FLSA states that "a cause of action arising out of a willful violation may be *commenced* within three years after the cause of action accrued."

- 6 -

29 U.S.C. § 255(a) (emphasis added).  Section 256 further defines when a cause of action has been "commenced" for statute of limitation purposes:

> In determining when an action is commenced for the purposes of section 255 of [the FLSA], an action commenced on or after May 14, 1947 [under the FLSA] shall be considered to be commenced on the date when the complaint is filed; *except that in the case of a collective or class action instituted under the [FLSA],* it shall be considered to be commenced in the case of any individual claimant—
>
> (a)    on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b)    if such written consent was not so filed or if his name did not so appear—*on the subsequent date on which such written consent is filed in the court in which the action was commenced.*

*Id*. § 256 (emphasis added).  In other words, in an FLSA collective action such as here, an opt-in plaintiff's action is deemed "commenced" from the date her opt-in form is filed, not from the date the complaint was filed.  *Campbell v. City of L.A.*, 903 F.3d 1090, 1104 (9th Cir. 2018) (citing 29 U.S.C. § 256)).  The Northern District of California has highlighted the FLSA's distinct opt-in standard in *Coppernoll v. Hamcor, Inc.*:

> For purposes of calculating the timeliness of a FLSA claim, the statute of limitations is tolled for each putative class member individually upon filing a written consent to become a party plaintiff.  This opt-in standard differs from the opt-out standard in a Rule 23 class action, where the statute of limitations is tolled for all putative class members when the complaint is filed.  Thus, without equitable tolling, the statute of limitations on a putative class member's FLSA claim continues to run in the time between the filing of the collective action complaint and the filing of their written consent opting-in.

2017 WL 1508853, at *1 (N.D. Cal. Apr. 27, 2017).

Because this is an FLSA collective suit, the Court should not have applied the opt-out standard; rather, the putative collective should be framed based on the opt-in standard under Section 256.  The Collective Certification Order erred when it set the time frame of

1  the putative collective as May 28, 2018, on the basis that an FLSA opt-in plaintiff's action

2  is commenced on the date the complaint is filed. (Doc. 82 at 25). Section 256 of the FLSA

3  rather establishes that an FLSA opt-in plaintiff's action is "commenced" from the date her

4  opt-in form is filed. 29 U.S.C. § 256. Plaintiffs certainly concede to this general rule.

5  (Doc. 90 at 2). Therefore, the Court agrees with Cracker Barrel that it is more appropriate

6  to set the time frame of the putative collective as three years before the Court certified this

7  matter as a collective action. The remaining issue, however, is Plaintiffs' request to

8  equitably toll the applicable statute of limitations.

9
10              **b.    Plaintiffs' Request for Equitable Tolling**

11         Plaintiffs request that the Court toll the statute of limitations on the putative

12  collective's FLSA claims due to (1) Cracker Barrel's efforts to prolong case proceedings

13  and (2) other delays in this case. (Doc. 90 at 5–8). Cracker Barrel moves to strike

14  Plaintiffs' request as procedurally deficient, arguing it is "inappropriate [] to imbed in a

15  response brief." (Doc. 93 at 2). Even so, Cracker Barrel submitted a proposed "Response

16  in Opposition" regarding Plaintiffs' equitable tolling arguments in the event the Court

17  construes Plaintiffs' request as a new motion. (Doc. 93-2). Plaintiffs have no objection to

18  the Court considering Cracker Barrel's Response in Opposition and have submitted a reply

19  brief thereto. (*See* Doc. 94). The Court will address Cracker Barrel's procedural

20  arguments before turning to the merits of Plaintiffs' request for tolling.

21              **i.     Plaintiffs' Request for Tolling is Construed as a**
22                      **Motion**

23         At the outset, to request a new claim for relief for the first time in a response brief

24  is not the appropriate procedure. *See Allen v. Beard*, 2019 WL 2501925, *2 n.3 (S.D. Cal.

25  June 17, 2019) (explaining "a defendant must have 'fair notice' of the claims and the

26  grounds for relief" and so a plaintiff "may not raise new claims or new grounds for relief

27  in opposition to [a] motion") (citing *Pickern v. Pier I Imports (U.S.), Inc.*, 457 F.3d 963,

28  968 (9th Cir. 2006))); *Griego v. Cnty. of Maui*, 2017 WL 2882695, at *5 (D. Haw. July 6,

2017) ("The regular briefing protocol for a motion would be undermined if a new motion (other than a mirror-image motion such as a cross- or counter-motion) were countenanced if mentioned in an opposition memorandum."). Plaintiffs indeed recognize they have failed to file a motion for equitable tolling. (Doc. 90 at 8 n.3). Nonetheless, because Cracker Barrel preemptively submitted a Response in Opposition to Plaintiffs' tolling arguments, to which Plaintiffs have replied, any notice concerns are remedied. In the interest of judicial economy, the Court will proceed by construing Plaintiffs' request for equitable tolling as a fully briefed motion.[8] Plaintiffs, however, are admonished for this unconventional procedure.

### ii.     Plaintiffs' Request for Tolling has Merit

As to the merits of Plaintiffs' request, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not as a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). The Ninth Circuit has stated that courts have discretion to apply equitable tolling on a case-by-case basis, but that such relief is to be applied "sparingly" and in "extreme" scenarios. *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992); *see also Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757, 760-61 (9th Cir.1981), *abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, (1989) (stating the statute of limitations under Section 255 of the FLSA may be tolled "when equity warrants"). For example, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22, 1999). The Court finds the latter warrants tolling here.

Plaintiffs argue equitable tolling should apply from either September 3, 2021—the date Plaintiffs' initial Motion to Certify Class (Doc. 8) was fully briefed—or October 4, 2021—the date the Court granted Cracker Barrel's Motion to Stay Discovery

---

[8] (Doc. 90 at 5–8 (Plaintiffs' Request for Equitable Tolling)); (Doc. 93-1 (Cracker Barrel's Response)); (Doc. 94 (Plaintiffs' Reply)).

1    (Docs. 41; 45).  (Doc. 90 at 7–8).  Plaintiffs point to (1) Cracker Barrel's efforts to prolong
2    the case and (2) the Court's discretionary case management decisions as circumstances
3    beyond their control that give rise to equitable tolling.  (*Id*. at 8).  Cracker Barrel contends
4    Plaintiffs cannot rely on their previously failed litigation attempts to seek tolling, as the
5    Court ultimately denied Plaintiffs' initial Motion to Certify Class and dismissed the
6    complaint that was connected to the Court's stay of discovery.  (Doc. 93-2 at 4).

7         The Court agrees with Cracker Barrel that failed litigation efforts are hardly the type
8    of extreme circumstances that justify equitable tolling.  However, the Court is persuaded
9    by Plaintiffs' line of authorities that have applied equitable tolling "where the court's
10   discretionary case management decisions have led to procedural delay beyond the control
11   of the putative collective action members."  *Koval v. Pac. Bell Tel. Co.*, 2012 WL 3283428,
12   *7 (N.D. Cal. Aug. 10, 2012); (*see* Doc. 90 at 7–8).  Those authorities have found delays
13   beyond a plaintiff's control include the time a court requires to rule on a motion to certify
14   a collective action under the FLSA.  *See Winningham v. Rafeal's Gourmet Diner, LLC*,
15   2022 WL 18359485, at *2 (D. Or. Dec. 19, 2022), *report and recommendation adopted*,
16   2023 WL 197005 (D. Or. Jan. 17, 202; *Small v. Univ. Med. Ctr. of S. Nevada*, 2013 WL
17   3043454, at *3 (D. Nev. June 14, 2013)); *Helton v. Factor 5, Inc.*, 2011 WL 5925078, *2
18   (N.D. Cal. Nov. 28, 2011).  Here, the Court took under advisement Plaintiffs' Second
19   Motion to Certify Class for six months before conditionally certifying this action as a
20   collective.  The Court required an additional ten months to resolve Cracker Barrels' five
21   pending motion, all of which has been delaying the dissemination of notice to the putative
22   collective despite this action being conditionally certified under the FLSA.  Given that
23   these delays are outside of Plaintiffs' control, the Court will equitably toll the statute of
24   limitations from September 6, 2022—the date Plaintiffs' meritorious certification motion
25   became ripe for review—until the date on which notice is sent to the putative collective.
26   *See Winningham*, 2022 WL 18359485, at *2; *Koval v. Pac. Bell Tel. Co.*, 2012 WL
27   3283428, at *7.

28        In sum, to account for (1) the applicable three-year statute of limitations under the

FLSA, (2) the opt-in standard under the FLSA, (3) the equitable tolling period that will run from September 6, 2022, until the date that notice is disseminated to the putative class, and (4) the policy that the broadest notice possible be approved on conditional certification of FLSA collective actions,[9] the time frame of the putative collective class for notice purposes shall include: all current and former Cracker Barrel servers who worked for Cracker Barrel from *September 6, 2019, to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme.

### 3.  The Scope of the Putative Collective

Cracker Barrel next argues the Court erred when it included individuals who are subject to arbitration in the putative collective. (Doc. 83 at 6–10). The Court directly addressed this issue in the Collective Certification Order. (Doc. 82 at 20–21). In denying Cracker Barrel's Motion to Compel Arbitration and Dismiss Second Amended Complaint with Prejudice, the Court further examined Cracker Barrel's Arbitration Agreement and clarified which employees are subject to arbitration versus those who are not:

> Employees who have signed the Agreement, including through Cracker Barrel's online training program, while the majority age are subject to the Agreement. By contrast, employees are not subject to the Agreement if they: (1) did not sign the Agreement; (2) signed the Agreement when they were a minor and are still a minor; or (3) signed the Agreement when they were a minor and voided the Agreement after turning the majority age.

(*Id*. at 20). Due to these nuanced circumstances, the Court found it best to address whether certain opt-in plaintiffs were subject to arbitration at the second stage of the certification process. (*Id*. at 21 (noting other courts in the Ninth Circuit that have found the same)). The Court concluded that—even though some of the notified members of the putative collective may be subject to arbitration—it was improper to reference the Arbitration Agreement in the putative collective definition because "[o]nly after the FLSA plaintiffs join this action, may the court entertain [a] defendants' arbitration-related motions seeking

---

[9] (*See* Doc. 82 at 24 (citing *Vega v. All My Sons Bus. Dev. LLC*, 2022 WL 684380, at *3 (D. Ariz. Mar. 8, 2022)).

to compel opt-in plaintiffs to arbitrate or to prohibit plaintiffs from proceeding collectively." (*Id*. at 21 (quoting *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825, at *9 (N.D. Cal. Dec. 21, 2018)). The Court further acknowledged that other areas of the Notice Forms would sufficiently alert potential opt-in plaintiffs that they can only join the action if they are not subject to arbitration. (*Id*. at 20 (citing Doc. 76-13 at 1, 2)).

Cracker Barrel contends the Court contradicted its prior orders when it did not account for a potential opt-in plaintiff's "arbitration signing status" in the putative collective for notice purposes. (Doc. 83 at 7). In Cracker Barrel's opinion, by determining which employees are subject to arbitration and which are not, the Court fully resolved the issue of enforceability in this matter and failed to tailor the putative collective definition accordingly. (*Id*.) Cracker Barrel complains that "while 53,750 individuals either have not signed the Agreement or [were] minors at the time of signing, a staggering 108,184 individuals have signed the Agreement as adults and, per the Court's previous Orders, cannot bring their claims in Court and are ineligible to participate." (*Id*.) Cracker Barrel cites to *Droesch v. Wells Fargo Bank* for the proposition that it should be allowed to present evidence on which employees are bound to arbitrate their claims. (*Id*. (citing 2021 WL 2805604 (N.D. Cal. July 6, 2021)). Cracker Barrel further argues the Court should revise the putative collective to expressly exclude individuals "who signed the [Arbitration] Agreement after turning 18 years old." (*Id*. at 10). This is because any inclusion in the putative collective of individuals who are potentially subject to arbitration "greatly offends" the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. ("FAA"). (*Id*. at 9–10).

In opposition, Plaintiffs contend that the Court did not misapply any of its prior orders because the Collective Certification Order is the first time the Court had addressed the issue of which potential plaintiffs should get notice. (Doc. 90 at 9). They argue that all other prior orders had discussed the enforceability of the Arbitration Agreements as to specific named plaintiffs only. (*Id*.) Plaintiffs further maintain that sorting through which potential opt-in plaintiffs are subject to arbitration is more appropriate for the second stage

of the FLSA certification process due to outstanding factual and legal disputes.  (*Id*. at 9–10).  The Court agrees with Plaintiffs in all regards.

As noted in Cracker Barrel's primary authority, the Ninth Circuit has not yet considered whether FLSA notice should be provided to individuals who signed arbitration agreements.  *See Droesch*, 2021 WL 2805604, *2.  So, district courts have taken varying approaches when handling arbitration issues in FLSA collective actions.  In concluding that remaining disputes over which potential opt-in plaintiffs are subject to arbitration are better addressed at the second stage of the certification process, the Court pointed to other courts in this circuit in accord.  (Doc. 82 at 21 citing *Monplaisir v. Integrated Tech Grp., LLC*, 2019 WL 3577162, at *3 (N.D. Cal. Aug. 6, 2019) ("[T]o avoid putting the cart before the horse, this inquiry [of arbitration] is best left for step two"); *Mejia v. Bimbo Bakeries USA Inc.*, 2018 WL 11352489, at *4 n.7 (D. Ariz. May 7, 2018); *Campanelli*, 2018 WL 6727825, at *8–9; *Delara v. Diamond Resorts Int'l Mktg., Inc*., 2020 WL 2085957, at *5–6 (D. Nev. Apr. 30, 2020).  Although Cracker Barrel invokes a number of out-of-circuit authorities[10] and persuasive, in-circuit authorities[11] to argue a contrary approach, Cracker Barrel has not pointed to any binding authority that precludes the Court from addressing arbitrability issues at the second stage of certification.  Nor is the Court aware of any.  Therefore, the Court did not commit clear error.  That Cracker Barrel merely disagrees with the Court's decision to follow suit with other courts in this circuit is an insufficient basis for reconsideration.  *See Leong*, 689 F. Supp. at 1573.

Moreover, Plaintiffs' list of remaining factual issues illustrates why the enforceability of Cracker Barrel's Arbitration Agreement must be determined on a case-by-case basis.  Plaintiffs identify the following disputes among the parties: (1) whether an employee signed the Agreement when they were a minor depends on the state in which the

---

[10] For example, Cracker Barrel relies on *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020) and *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019).  (Doc. 83 at 9–10).

[11] For example, Cracker Barrel relies on *Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 2805604 (N.D. Cal. July 6, 2021) and *Sandbergen v. Ace Am. Ins. Co.*, 2019 WL 13203944 (N.D. Cal. June 17, 2019).  (Doc. 83 at 8–9).

1    Agreement was signed; (2) there may be adult employees who signed the Agreement as

2    minors who still need to be given the opportunity to void the Agreement; and (3) employees

3    who signed the Agreement, ended their employment with Cracker Barrel, and then were

4    later rehired by Cracker Barrel may not be subject to arbitration.  (Doc. 90 at 9–10).

5    Indeed, the Court had to perform fact-intensive analysis to determine that Plaintiff Dylan

6    Basch is not subject to arbitration because he had voided the Agreement within a

7    reasonable time[12] after turning the majority age.  (Doc. 82 at 6–10).  The Court cannot

8    possibly define which opt-in plaintiffs are certainly subject to arbitration at this juncture.

9    Separate analyses will need to be performed on each putative collective member based on

10   the facts of their employment with Cracker Barrel.

11          Cracker Barrel is reminded that we are still at the first preliminary certification stage

12   of the Ninth Circuit's two-step approach to FLSA collective actions, which is called

13   "preliminary" for a reason.  *Campbell*, 903 F.3d at 1100.  It is not the court's role to resolve

14   factual disputes, decide substantive issues relating to the merits of the claims, or make

15   credibility determinations at this first stage of certification—yet, that is exactly what

16   Cracker Barrel asks this Court to do.  *See Lee v. Asurion Ins. Servs. Inc.*, 2016 WL 9525665,

17   at *2 (D. Ariz. Dec. 2, 2016) (citing *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D.

18   Ariz. 2010)); *see also Thornsbury v. Pet Club LLC*, 2016 WL 11602764, at *2 (D. Ariz.

19   Nov. 22, 2016).   Although the Court has identified nuanced circumstances in which a

20   Cracker Barrel employee *may* not be subject to arbitration, a final determination requires

21   further fact inquiries that are better resolved at the second stage of certification.  *See Davis*

22   *v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 102735, at *10 (D. Nev. Jan. 12,

23   2009) (stating that "disparities in the factual employment situations of any plaintiffs who

24   choose to opt in should be considered during the court's second tier analysis").

25   Furthermore, the putative collective does not run afoul of the FAA because the Notice

26   Forms adequately alerts potential opt-in plaintiffs that they can only join the action if they

27

28   ───────────────
[12] Based on Plaintiff Dylan Basch's circumstances, the Court found that eighteen months
     was a reasonable time for him to disaffirm Cracker Barrel's Arbitration Agreement.  (Doc.
     82 at 8–9).

are not subject to arbitration.  (*See* Doc. 76-13 at 1, 2).[13]  And, "[a]t this stage, all putative collective members remain potential plaintiffs."  *Monplaisir*, 2019 WL 3577162, at *3 (emphasis added).

### 4.      Conclusion

In sum, Cracker Barrel's Motion for Reconsideration is granted to the extent it relates to the time frame of the putative collective, but denied to the extent it relates to the scope of the putative collective.  Plaintiffs' request for equitable tolling is granted in part, and the Court will toll the statute of limitations on the putative collective's FLSA claims from September 6, 2022—the date Plaintiffs' meritorious certification motion became ripe for review—until the date on which notice is sent to the putative collective.  Cracker Barrel's Motion to Strike Plaintiffs' Request for Equitable Tolling will therefore be denied. To reflect these findings, the putative collective for notice purposes shall be modified to the following definition: all current and former Cracker Barrel servers who worked for Cracker Barrel from *September 6, 2019*, *to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme.  Final determinations as whether certain opt-in plaintiffs are subject to arbitration will be reserved for the second stage of certification.

### B.      Cracker Barrel's Motion to Certify Interlocutory Appeal (Doc. 84)

Cracker Barrel next requests the Court to certify the Collective Certification Order for interlocutory appeal to the Ninth Circuit under 28 U.S.C. § 1292(b).  (Doc. 84 at 8–15). Cracker Barrel argues the Collective Certification Order gives rise to the following four questions that are appropriate for appeal:

> 1.      Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whom the Court has determined to be bound by an enforceable arbitration agreement.

---

[13] For example, the Notice is addressed to "All Cracker Barrel servers, *not subject to arbitration*, who were paid on a "tip credit" basis or less than minimum wage by Cracker Barrel at any time in the last three (3) years, or worked off-the-clock."  (Doc. 76-13 at 1) (emphasis added).  The Notice further states in the lawsuit description that "only servers *who are not subject to arbitration* may join this lawsuit."  (*Id*. at 2) (emphasis added).

2.      Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whose claims would be time-barred by the FLSA's most-inclusive three year statute of limitations period.

3.      Whether *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265 (2017), prevents a District Court from sending notice under Section 216(b) of the FLSA to individuals over whom the Court lacks specific personal jurisdiction.

4.      Whether a District Court, in determining whether putative plaintiffs are "similarly situated" to named plaintiffs under Section 216(b) of the FLSA, must follow the two-step certification process detailed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D. N.J. 1987), or instead should "rigorously enforce the similarly situated requirement" through a period of preliminary discovery as held in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021).

(*Id.* at 7). Plaintiffs did not file a response in opposition to Cracker Barrel's Motion. Under Rule 7.2 of the Local Rules of Civil Procedure, if a party "does not serve and file the required answering memoranda, . . . such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." LRCiv. 7.2(i); *see also Brydges v. Lewis*, 18 F.3d 651, 652 (9th Cir. 1994). However, because requests for interlocutory appeals are to be granted "only in exceptional circumstances," the Court will nonetheless proceed to evaluate the merits of Cracker Barrel's Motion. *City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 12250532, at *2 (D. Ariz. June 5, 2013) (citing *U.S. v. Woodbury*, 263 F. 2d 784, 799 n.11 (9th Cir. 1959)).

### 1.      Legal Standards

Generally, "parties may appeal only from orders which end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (internal citations omitted). A "narrow exception" to the final judgment rule allows a non-final order to be certified for interlocutory appeal provided that three statutory requirements are met: the non-final order "(1) involves a

controlling question of law" as to which "(2) there is substantial ground for difference of opinion" and where "(3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Cracker Barrel, as "[t]he party seeking certification[,] has the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015) (internal citations omitted).

The first statutory requirement is that an order must involve a controlling question of law.  "While Congress did not specifically define what it meant by 'controlling,' the legislative history of [28 U.S.C. §] 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).  "Examples of controlling questions of law include fundamental issues such as the determination of who are necessary and proper parties, whether a court to which a case has been transferred has jurisdiction, or whether state or federal law should be applied." *Villarreal*, 85 F. Supp. 3d at 1068 (internal citations omitted).

As to the second statutory requirement to determine if a "substantial ground for difference of opinion" exists under 28 U.S.C. § 1292(b),[14] courts must examine to what extent the controlling law is unclear.  Courts traditionally will find this requirement is satisfied where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633.  However, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id*.

Last, the third statutory requirement "that the appeal must be likely to materially speed the termination of the litigation [] is closely linked to the question of whether an

---

[14] Unless where otherwise noted, all Section references are to Title 28 of the United States Code.

issue of law is 'controlling,' because the district court should consider the effect of a reversal on the management of the case." *L.H. Meeker v. Belridge Water Storage District*, 2007 WL 781889, at *6 (E.D. Cal. March 13, 2007) (citing *In re Cement*, 673 F.2d at 1026). Where "a substantial amount of litigation remains in th[e] case regardless of the correctness of the Court's ruling . . . arguments that interlocutory appeal would advance the resolution of th[e] litigation are unpersuasive." *Lillehagen v. Alorica, Inc.*, 2014 WL 2009031, at *7 (C.D. Cal. May 15, 2014).

28 U.S.C. § 1292(b) "is to be applied sparingly" and is not intended "merely to provide review of difficult rulings in hard cases." *City of Glendale*, 2013 WL 12250532, at *2 (citing *Woodbury*, 263 F. 2d at 799 n.11). "Even when all three statutory requirements are satisfied, district court judges have 'unfettered discretion' to deny certification." *Id.* (internal citations omitted). Therefore, "a district court's denial of a motion to certify a decision for immediate appeal under section 1292(b) is not reviewable by the appellate court." *Environmental Protection Information Center v. Pacific Lumber Co.*, 2004 WL 838160, at *2, n. 6 (N.D. Cal. April 19, 2004) (citing *Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1550 (9th Cir. 1994)). By the same token, "[e]ven where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *Villarreal*, 85 F. Supp. at 1068.

## 2.      Question Regarding Arbitration

Cracker Barrel's first proposed question for interlocutory appeal is: "Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whom the Court has determined to be bound by an enforceable arbitration agreement." (Doc. 84 at 7). The Court agrees with Cracker Barrel that the statutory requirement is met because this question would "dramatically affect the number of persons who will be invited to file consents to join as plaintiffs." (Doc. 84 at 9). Thus, this issue goes to the fundamental determination of who the necessary and proper parties are in this matter. *See Villarreal*, 85 F. Supp. 3d at 1068. The Court further agrees the second statutory requirement is met because the Ninth Circuit has not yet opined on the issue, and there are

cases displaying that "other courts both within and outside the Ninth Circuit are hostile to such an approach."  (Doc. 84 at 11); (*see also* Doc. 82 at 20–21); *see also supra* Section II.A(3).

Lastly, the Court finds the third statutory requirement is met because resolution of the issue would materially affect the manner and speed in which litigation is terminated against those individuals who are subject to arbitration.  Although courts across the nation have found that FLSA conditional class certification orders are not generally proper for interlocutory appeal due to their preliminary nature, *see Villarreal*, 85 F. Supp. 3d at 1069–70 (collecting cases), the Court finds the split decisions among circuit courts and inner-circuit district courts on how to approach arbitration issues in FLSA collective actions present the type of exceptional circumstances that warrant interlocutory appeal.  *See Couch*, 611 F.3d at 633.

Therefore, the Court will certify Cracker Barrel's proposed question regarding arbitration in FLSA collective actions for interlocutory appeal under 28 U.S.C. § 1292(b).

### 3.    Question Regarding FLSA Statute of Limitations

Cracker Barrel's second proposed question for interlocutory appeal is: "Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whose claims would be time-barred by the FLSA's most-inclusive three year statute of limitations period."  (Doc. 84 at 7).  Because the Court will grant Cracker Barrel's request to modify the time frame of the putative collective so that it reflects the opt-in standard under Section 256 of the FLSA, this issue is moot.  *See supra* Section II.A(2).

### 4.    Question Regarding Specific Personal Jurisdiction

Cracker Barrel's third proposed question for interlocutory appeal is: "Whether *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty*., 582 U.S. 255, 265 (2017), prevents a District Court from sending notice under Section 216(b) of the FLSA to individuals over whom the Court lacks specific personal jurisdiction."  (Doc. 84 at 7).  The Court agrees with Cracker Barrel that this question meets all three statutory requirements.  This is a controlling question of law that would materially speed the

termination of litigation because it concerns a jurisdictional issue that would fundamentally "change the nature of this action from a nationwide action to one focused only on claims with connection to the State of Arizona." (*Id.* at 9). An outcome narrowing this matter as such would indeed avoid protracted and expensive litigation. *See Villarreal*, 85 F. Supp. 3d at 1068. Furthermore, there is clearly a substantial ground for difference of opinion as the circuit courts are split on the issue. And, because the Ninth Circuit has yet to weigh in on this issue, inner-circuit courts have consequently applied varying approaches. (Doc. 84 at 12). The Court has certainly noted these issues in its Certification Order. (Doc. 82 at 21–23).

Therefore, the Court will certify Cracker Barrel's proposed question on specific personal jurisdiction in FLSA collective actions for interlocutory appeal under 28 U.S.C. § 1292(b).

### 5.   Question Regarding Certification Process for FLSA Collective Actions

Cracker Barrel's fourth and last proposed question for interlocutory appeal is: "Whether a District Court, in determining whether putative plaintiffs are 'similarly situated' to named plaintiffs under Section 216(b) of the FLSA, must follow the two-step certification process detailed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D. N.J. 1987), or instead should 'rigorously enforce the similarly situated requirement' through a period of preliminary discovery as held in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021)." (Doc. 84 at 7). The Court agrees with Cracker Barrel that the first statutory requirement is met because this question would replace the certification framework as followed in the Ninth Circuit. (*Id.* at 10). However, the Court disagrees that the second statutory requirement is met. Cracker Barrel argues a substantial ground for difference of opinion exists because "[t]he Ninth Circuit has used the two-step *Lusardi* approach but has never decided whether the approach follows the FLSA, or whether *Swales* reflects the proper approach." (*Id.* at 12). But, as stated in the Collective Certification Order, the Ninth Circuit has explicitly established the two-step approach to FLSA

1   collective action certification in *Campbell*, 903 F.3d at 1108–09, which addresses

2   "preliminary certification" at step one and "decertification" at step two.  (Doc. 82 at 11–

3   13).  *Swales* has no binding effect on the Ninth Circuit.  Therefore, Cracker Barrel's fourth

4   proposed question is not proper for interlocutory appeal.  *See Couch*, 611 F.3d at 633

5   (holding that "just because a court is the first to rule on a particular question or just because

6   counsel contends that one precedent rather than another is controlling does not mean there

7   is such a substantial difference of opinion as will support an interlocutory appeal").

8               **6.      Conclusion**

9        In sum, Cracker Barrel's Motion to Certify Interlocutory Appeal is denied as to

10   proposed questions two and four, but granted as to questions one and three.  The Court will

11   permit Cracker Barrel to seek appeal of the Collective Certification Order under 28 U.S.C.

12   1292(b) regarding arbitration and specific personal jurisdiction in FLSA collective actions.

13   **C.    Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96)**
14   **and Motion to Strike Plaintiffs' Notice of Supplemental Authority**
15   **(Doc. 101)**

16        The final issue is whether the Court should stay all proceedings in this matter

17   pending Cracker Barrel's various appeals of the Collective Certification Order.  Cracker

18   Barrel argues that, under the United States Supreme Court's June 23, 2023, decision in

19   *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023),[15] an automatic stay is required because

20   Cracker Barrel appealed the Collective Certification Order under Section 16 of the FAA.[16]

21   (Doc. 96 at 5–7).  Alternatively, Cracker Barrel argues the Court should exercise its

22   _____

23   [15] At the time Cracker Barrel filed its Motion to Stay Proceedings Pending Appeal,
24   *Coinbase* was not yet issued.  On June 25, 2023, Plaintiffs file a Notice of New Authority
     (Doc. 99) alerting the Court that *Coinbase* had published.  Cracker Barrel moved to strike
     Plaintiffs' Notice on the basis that it contained improper, additional legal arguments.  (Doc.
25   101).  The Court agrees, and will strike Plaintiffs' Notice from the record.  In any event,
     Plaintiffs' Notice of New Authority is not necessary for the Court to consider the
26   implications of *Coinbase* on this matter.

27   [16] Section 16 of the FAA provides that "[a]n appeal may be taken from an order denying
     an application under section 206 of this title to compel arbitration."  9 U.S.C. § 16(a)(1)(C).
28   The Collective Certification Order denied Cracker Barrel's "Motion to Compel Arbitration
     and Dismiss Second Amended Complaint with Prejudice."  (Doc. 96 at 5–7), and Cracker
     Barrel indeed filed its Notice of Appeal (Doc. 91).

discretion to issue a stay under either test set forth in *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)[17] and *Landis v. N. Am. Co.*, 299 U.S. 428, 254 (1936).[18]   (*Id*. at 7–14).   In opposition, Plaintiffs argue that *Coinbase* has no bearing on this matter because it applies to non-frivolous appeals, whereas Cracker Barrel's appeal is frivolous.  (Doc. 97 at 4–7).   Plaintiffs further contend *Coinbase* is distinguishable because the decision concerns a Federal Rule of Civil Procedure 23 class action while this matter concerns an FLSA collective action.  (*Id*. at 7–9).  Last, Plaintiffs argue both the *Nken* and *Landis* tests favor litigation to proceed.  (*Id*. at 9–17).

The Court need not weave through the parties' tangled, technical arguments to conclude a stay of proceedings in this matter is warranted.  In holding that district courts are required to stay its proceedings when a party appeals the denial of its motion to compel arbitration, *Coinbase* emphasized the long-standing principle that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'"  599 U.S. at 740 (quoting *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982)).  Accordingly, a stay is required pending Cracker Barrel's appeal of the Collective Certification Order under Section 16 of the FAA because (a) Cracker Barrel's appeal is non-frivolous, *see supra* Section II.B; and (b) whether this litigation may move forward in this Court is precisely what the Ninth Circuit must decide.  *See Coinbase*, at 599 U.S. at 741.  Likewise, at this juncture, the Court's control over dissemination of notice to the putative collective is divested because fundamental questions regarding arbitration and personal jurisdiction in FLSA collective actions stand to be

---

[17] Under the *Nken* test, a court should consider the following four-factors when deciding whether to stay proceedings: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770 (1987)).

[18] Under the *Landis* test, a court should consider the following three-factors when deciding whether to stay proceedings: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and question of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

resolved on interlocutory appeal.  *See supra* Section II.B.

Turning to the parties' individual interests, it is evident that Cracker Barrel would face irreparable harm absent a stay.  Cracker Barrel represents that of the 159,934 individuals in the putative collective, 106,184 are potentially subject to arbitration. (Doc. 96 at 10).  So, Cracker Barrel would incur significant discovery expenses should the certification process proceed.  Indeed, the size of the putative collective makes it likely that *both* parties would suffer irreparable harm in spending substantial time and resources on litigation that might otherwise be narrowed on appeal.  *See Salhotra v. Simpson Strong-Tie Co., Inc.*, 2022 WL 1091799, at *2 (N.D. Cal. Apr. 12, 2022) (collecting cases).  By comparison, the issuance of a stay would not pose injury to Plaintiffs—or the putative collective as potential opt-in plaintiffs—because the applicable statute of limitations will be equitably tolled from September 6, 2022, until the date on which notice is sent to the putative collective.  *See supra* Section II.A(2)(b).  This tolling period would necessarily include any duration the proceedings are stayed pending appeal.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254.  In light of *Coinbase* and the *Nken* and the *Landis* tests, the Court finds it appropriate to stay all proceedings in this matter pending Cracker Barrel's appeals to the Ninth Circuit.

Accordingly,

**IT IS ORDERED** that Cracker Barrel's "Motion for Clarification, or, in the Alternative, Reconsideration" (Doc. 83) is **granted in part and denied in part** as stated herein.  Lines 8–12 on page 28 of the March 31, 2023, Order (Doc. 82 at 28) is **stricken** and **amended** as follows:

> **IT IS FURTHER ORDERED** the collective class of potential plaintiffs is conditionally certified under 29 U.S.C. § 216(b) and shall consist of all current and former Cracker Barrel servers who (a) worked for Cracker Barrel from September 6, 2019, to the present in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme.

The remainder of the March 31, 2023, Order (Doc. 82) is otherwise **affirmed**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for equitable tolling (Doc. 90 at 5–8) is construed as a motion and is **granted**. The three-year statute of limitations on the putative collective's FLSA claims shall be tolled from September 6, 2022—the date Plaintiffs' meritorious certification motion became ripe for review—until the date on which notice is sent to disseminated to the putative collective. Cracker Barrel's "Motion to Strike Plaintiffs' Request for Equitable Tolling" (Doc. 93) is therefore **denied**.

**IT IS FURTHER ORDERED** that Cracker Barrel's "Motion to Certify Interlocutory Appeal" (Doc. 84) is **granted in part and denied in part** as stated herein. Cracker Barrel may seek appeal under 28 U.S.C. § 1292(b) of the March 31, 2023, Order (Doc. 82) regarding arbitration and specific personal jurisdiction in FLSA collective actions.

**IT IS FURTHER ORDERED** that Cracker Barrel's Motion to Strike Plaintiffs' Notice of Supplemental Authority (Doc. 101) is **GRANTED**. The Notice of Supplemental Authority at Doc. 99 shall be stricken and disregarded.

**IT IS FINALLY ORDERED** that Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96) is **granted**. As set forth herein, the proceedings in this matter are **stayed** until the Ninth Circuit resolves Cracker Barrel's appeals of the March 31, 2023, Order (Doc. 82).

Dated this 30th day of January, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge